TAGAROPULOS, S.A., a corporation,
Appellant,

v.

S.S. SANTA PAULA ex SS HANS IS-
BRANDTSEN, its engines, tackle, ap-
parel, furniture and spares, and all per-
sons intervening for their interests
therein, and Allied Tankers, Inc., a cor-
poration, Defendants,

Santa Margarita Tankers, Inc.,
Appellee.

No. 73-2708.

United States Court of Appeals,
Ninth Circuit.

Sept. 5, 1974.

Allan F. Bullard, San Pedro, Cal., for appellant.

Francis J. MacLaughlin, of Lillick, McHose, Wheat, Adams & Charles, Los Angeles, Cal., for appellee.

OPINION

Before ELY and CARTER, Circuit Judges, and EAST, District Judge.*

ELY, Circuit Judge:

This appeal arises from the District Court's judgment denying the claim of appellant Tagaropulos, S.A., a corporation, (hereinafter Tagaropulos) against appellee Santa Margarita Tankers, Inc. (hereinafter Santa Margarita). The action was brought under 46 U.S.C. § 971, entitling to persons furnishing necessaries to vessels the right to a maritime lien, and under 28 U.S.C. § 1333. We have jurisdiction under 28 U.S.C. § 1291.

The District Court found that Tagaropulos's alleged lien was barred by laches. The sole issue here is whether that finding was clearly erroneous. We affirm.

There is no significant dispute as to the facts. Tagaropulos, which operated a ship chandlering business in the Panama Canal Zone, delivered provisions to the ship from November, 1968, to June, 1970. During that time, the vessel was owned by Allied Tankers, Inc., a subsidiary of the Isbrandtsen Line. Although the terms of credit called for payment in

* Honorable William G. East, Senior United States District Judge, Eugene, Oregon, sitting by designation.

thirty days, Tagaropulos allowed over two years to expire before the shipowner made any payment whatsoever. Allied's purchasing agent, Central Purchasing & Service, Inc., did pay Tagaropulos $1,463.78 on February 17, 1970, and $11,431.32 on June 6, 1970. With a balance of over seven thousand dollars still owing, Tagaropulos allowed the ship's purchasing agent to charge additional supplies to the ship on June 18, 1970. The amount of this purchase was $24,261.44. No further payments were ever made, and the ship never returned to the Canal Zone.

It is apparent, we think, that Tagaropulos was inexcusably dilatory in attempting to collect the amounts owed to it by the ship. Despite the fact that Tagaropulos could have arrested the ship on any of the dates when it traversed the Canal between November, 1968, and June, 1970, Tagaropulos took no action other than attempting to contact the ship's purchasing agent. Furthermore, Tagaropulos could have ascertained the location of the ship after June, 1970, by either contacting Isbrandtsen's local agent or by requesting information from the Military Sea Transport Service. Tagaropulos knew that the ship was being operated under military contract. Tagaropulos did not file suit against either Allied Tankers or Central Purchasing & Services, Inc., nor did it seek to file a lien against the ship in its home port pursuant to 46 U.S.C. § 925(a).

The ship, which was advertised for sale for over a year, was eventually purchased from Allied Tankers by Santa Margarita on December 6, 1970. Prior to the purchase, Santa Margarita had checked both the home port and the ship's log for liens outstanding against the ship. Although no liens were entered in the log, Santa Margarita did discover therein entries for repairs. Santa Margarita contacted the shipyards that had made these repairs and learned that there were unpaid bills outstanding. In addition, various shipyards had recorded liens against the ship in its home port, and Santa Margarita duly noted these liens. The record clearly reveals that Santa Margarita made every effort to unearth all claims against the ship. Obviously, any such liens or unpaid bills would affect the vessel's purchase price. Furthermore, Allied Tankers assured Santa Margarita, both orally and in writing, that no claims other than those discovered by Santa Margarita existed against the ship.

█ The standard of diligence required by the holder of an unrecorded lien against a bona fide purchase of a vessel is "a high degree of diligence." *See* Merchants & Marine Bank v. The Fishing Vessel T. E. Welles, 289 F.2d 188, 190 (5th Cir. 1961) and cases collected therein; The Everosa, 93 F.2d 732, 735 (1st Cir. 1937); Waterways Marine, Inc. v. Brooks Liquid Transport, Inc., 291 F.Supp. 703 (N. D. Ill. 1968). In *Waterways Marine, supra,* the District Court considered a number of factors relevant to a determination that the lienholder had not exercised the high degree of diligence required. These factors were (1) a failure to file a claim in the ship's home port; (2) a failure to arrest the ship on occasions when it could have been arrested; (3) a failure to assert a claim against the ship's purchaser until nearly a year had elapsed from the last date of a sale to the ship; and (4) a failure to respond to a request from a credit association "for advice of" or to "file notice of" any claims or liens against the ship.

█ In our case, Tagaropulos did not file a home port lien, nor did it attempt to arrest the vessel when it sailed through the Canal Zone. Moreover, Tagaropulos never attempted to ascertain the ship's location and arrest it in another port. It waited for over two years before taking any action whatsoever in attempting to recover even a partial payment of Allied's bill. And at a time when Allied still owed over seven thousand dollars to Tagaropulos, the latter supplied the ship with over twenty-four thousand dollars worth of supplies. When the ship was ultimately purchased

by Santa Margarita, Tagaropulos delayed filing suit for an additional sixteen months thereafter.

From the foregoing, the conclusion is inescapable that Tagaropulos "slept on its rights." It failed to exercise even a minimum degree of diligence, and the District Court properly held, in effect, that to penalize the ship's innocent purchaser would work a gross inequity.

Affirmed.