**KANEMATSU–GOSHO LTD.,**
**Plaintiff-Appellant,**

v.

**M/T MESSINIAKI AIGLI, Amigos Compania Naviera S.A., Mobil Shipping and Transportation Co., Leeward Petroleum Corp., Ltd., and Doman Tankers, Inc., Defendants-Appellees.**

**LEEWARD PETROLEUM COMPANY, LTD., Third-Party Plaintiff,**

v.

**E.W. SAYBOLT & CO., LTD., Third-Party Defendant-Appellee.**

No. 320, Docket 86–7610.

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1986.
Decided March 20, 1987.

J. Edwin Carey, New York City (Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, Alan S. Loesberg, Donald B. Allen, of counsel), for plaintiff-appellant.

Hollis M. Walker, Jr., New York City (Walker & Corsa, Vera E. Weinberg, Scott A. Walker, of counsel), for defendant-appellee, Amigos Compania Naviera S.A.

John R. Foster, New York City (Waesche, Sheinbaum & O'Regan, P.C., of counsel), for defendant-appellee, Mobil Shipping and Transportation Co.

Lionel R. Saporta, New York City (Hill, Betts & Nash, of counsel), for defendant-appellee, Leeward Petroleum Company, Ltd.

Richard A. Nachman, New York City (Ohrenstein & Brown, of counsel), for third-party defendant-appellee, E.W. Saybolt & Co., Ltd.

Before MESKILL, MINER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Appellant Kanematsu-Gosho Ltd. ("Kanematsu") commenced an action under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 *et seq.*, alleging contamination of a cargo of "jet fuel, kerosene," against the vessel M/T Messiniaki Aigli ("AIGLI"); the ship's owner Amigos Compania Naviera S.A. ("Amigos"); the time charterer Mobil Shipping and Transportation Co. ("Mobil"); and the voyage charterer Leeward Petroleum Company, Ltd. ("Leeward"). Leeward impleaded E.W.

Saybolt & Co., Ltd. ("Saybolt") for indemnification purposes.

The United States District Court for the Southern District of New York (Motley, Ch. J.), after a bench trial, dismissed appellant's claims for failure to present a *prima facie* case, finding that appellant had not "demonstrated that any material change occurred in the cargo between the time of its loading" and discharge. The district court also entered an order awarding costs and attorneys' fees to appellees Amigos, Mobil, Leeward, and Saybolt. Appellant moved the district court pursuant to Federal Rule of Civil Procedure 52(b) for an order amending its findings and judgment, but was denied the relief requested by decision dated March 12, 1986. Appellant comes before this court, contending that the district court erred in finding that appellant failed to establish a *prima facie* case of liability and in assessing reasonable costs and attorneys' fees in appellees' favor.

We affirm the district court's judgment insofar as it dismisses appellant's claims but reverse that part of the judgment awarding appellees costs and attorneys' fees.

### BACKGROUND

On November 13, 1981, appellee Leeward, a corporation in the business of buying and selling petroleum products, contracted with a non-party to this action, Shell Oil Company, for the purchase of approximately 250,000 barrels of what it described as "jet fuel." The contract provided for the delivery of the fuel "into buyer's designated vessel" at Shell Oil Company facilities near Houston, Texas.

In order to transport the fuel, Leeward entered into an agreement with appellee Mobil for the chartering of a tanker, the AIGLI. Mobil had earlier chartered the AIGLI from its owner, Amigos, for a term of ten years, with Amigos retaining responsibility for maintaining and supporting the vessel.

The jet fuel was loaded onto the AIGLI on December 11–12, 1981 and was sampled both before and after loading by appellee Saybolt, an independent inspector. Saybolt evaluated and rated these samples of "jet fuel," and issued a "Laboratory Analysis Report." Saybolt gave the fuel oil a color rating of Saybolt + 26, representing a bright, "water-white" color, and found the sulphur content to be .029%. Saybolt found its "smoke point" to be 27 mm.

On December 23, 1981, Leeward sold the "jet fuel," as it was once again described, to a non-party to this action, Tradax Petroleum Ltd. In the agreement for sale, Leeward attested to the quality of the jet fuel by referring to the Saybolt specifications.

Tradax promptly resold the cargo to appellant Kanematsu, describing it as "jet fuel *as per loaded specifications*" (emphasis added), and reiterating the Saybolt test results.

A few days later, the AIGLI began its journey from Texas to Kawasaki, Japan, with a bill of lading describing the cargo as "jet fuel, kerosene." While en route, appellant contracted to sell most of the cargo to a Japanese entity, General Sekiyu K.K. ("Sekiyu"), describing the cargo as "kerosene" and maintaining that its Saybolt specifications were *inter alia* as follows: Color, "+ 25 or over;" sulphur content, "0.001 or under;" and smoke point, "23 or over."

On arrival in Kawasaki, the cargo was tested. The sulphur level was calculated to be .021%; the composite color rating was found to be Saybolt + 23, slightly darker than on loading; and the smoke point was set at 23 mm. Approximately 600 barrels of sea water also were found in the tanks.

In order to correct what appellant alleged to be quality variations, appellant directed that the AIGLI proceed to another Japanese port for reconditioning of its cargo at a refinery operated by Idemitsu Kosan Co., Ltd. ("Idemitsu"). Appellant alleges that it incurred $358,270.78 in reconditioning costs.

### DECISION BELOW

After a non-jury trial, the district court issued findings of fact and conclusions of law as to the question of liability under COGSA, finding that appellant had failed

to prove "damage to the cargo carried aboard the AIGLI ... either with respect to water content or to color," and thereby dismissed appellant's claims.

The district court reached this conclusion based upon the court's findings (1) that "there was no diminution in the market value of the cargo as delivered" and (2) that "the cargo's physical properties had not ... deteriorated in any way material to its value."

As to the question of attorneys' fees, the district court, pursuant to its inherent equitable powers, found that the action had "been brought vexatiously and in bad faith," and accordingly awarded reasonable costs and attorneys' fees.

## DISCUSSION

### 1. *Prima Facie Case of Liability under COGSA*

Section 1303 of Title 46 of the United States Code imposes a duty upon carriers to "exercise due diligence to—(a) Make the ship seaworthy; (b) Properly man, equip, and supply the ship; (c) Make the holds ... and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation." 46 U.S.C. § 1303.

■ In order to establish a *prima facie* case of breach of this duty under COGSA, a plaintiff must prove that " 'the goods were damaged while in the carrier's custody.' " *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 351 (2d Cir.1981) (quoting *Pan-American Hide Co. v. Nippon Yusen (Kabushiki) Kaisha*, 13 F.2d 871, 871 (S.D. N.Y.1921) (L. Hand, J.)); *see also M.W. Zack Metal Co. v. S.S. Birmingham City*, 311 F.2d 334, 337 (2d Cir.1962) ("the cargo owner bears the burden of proving delivery of the goods in good condition and outturn by the vessel ... in damaged condition"), *cert. denied*, 375 U.S. 816, 84 S.Ct. 50, 11 L.Ed.2d 51 (1963).

■ As stated above, the district court found that the market value of the goods had not diminished and that no "material change had occurred in the cargo between the time of its loading" and discharge.

More specifically, the district court found (1) "that the presence of suspended salt water in a cargo of jet fuel is not materially harmful to it and in no way ought to require the cargo's re-refining," (2) that appellant had made no attempt to sell the cargo as jet fuel, and (3) that even if the cargo had changed color, "such an alteration would not be material to its value" either as jet fuel, as simple kerosene fuel, or as home heating fuel.

We do not find the district court's factual findings to be clearly erroneous. Fed.R. Civ.P. 52(a); *see McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954). The district court's findings are supported by substantial evidence and it most certainly cannot be said that "the findings [are] so against the great preponderance of the credible testimony that [they do] not reflect or represent the truth and right of the case." *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.* 662 F.2d 1104, 1109 (5th Cir.1981) (citations omitted). Accordingly, we affirm the district court's decision dismissing appellant's claim for failure to present a *prima facie* case of liability.

### 2. *Measure of Damages*

Appellant contends that the district court erred as a matter of law in measuring damages based on diminution in market value. We disagree.

■ Generally, the measure of damages is the difference between the fair market value of the goods at their destination in the condition in which they should have arrived and the fair market value in the condition in which they actually did arrive. *Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer*, 422 F.2d 7, 18 (2d Cir.1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). "In no event shall the carrier be liable for more than the amount of damage *actually sustained*." 46 U.S.C. § 1304(5) (emphasis added); *see Internatio, Inc. v. M.S. Taimyr*, 602 F.2d 49, 50 (2d Cir.1979).

The computation of damages based upon fair market value is not the only method of

measurement. Rather, as the Supreme Court has observed,

> [t]he test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact *or otherwise not applicable.*

*Illinois Central Railroad v. Crail,* 281 U.S. 57, 64–65, 50 S.Ct. 180, 181, 74 L.Ed. 699 (1930) (emphasis added), *quoted in Internatio, supra,* 602 F.2d at 50.

■ In the instant case, the district court expressly rejected appellant's alternative method of computing damages based on the cost of restoring the cargo to its original condition, and relied instead on the testimony of an expert witness, who stated that there had been no diminution in the market value of the cargo. The district court stated:

> Plaintiff offers no legal support, however, for the proposition that this execeptional [sic] measure of damages should apply in this case. It has not offered any evidence that the cargo on the Aigli actually was refined at the Idemitsu refinery or that plaintiff actually paid the cost of such putative refining. Not to be lightly ignored, moreover, is the substantial evidence in this case that plaintiff made a sound profit from its swap with Idemitsu of the Aigli's cargo....

We find that the district court acted properly when it refused to apply appellant's "exceptional measure of damages," and thus conclude that the district court did not abuse its discretion in computing damages based on the fair market value method.

### 3. *Reasonable Costs and Attorneys' Fees*

As stated above, the district court found that appellant pursued its action vexatiously and in bad faith, and accordingly, based upon its equitable powers, awarded costs and attorneys' fees totaling $323,864.67. On this appeal, we must determine whether this award was appropriate.

Under the American Rule, a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). A court, however, pursuant to various statutory provisions or in the exercise of its inherent equitable powers, may award fees "to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex. rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (footnote omitted); *see generally* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 205–06 (1985) (historical note). In recognition of the potential chilling effect that such awards may have on the filing of actions, this court requires "a high degree of specificity in the factual findings of lower courts when attorneys' fees are awarded on the basis of bad faith," *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), and insists that there "be 'clear evidence' that the claims are 'entirely without color and made for reasons of harassment or delay or for other improper purposes.'" *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (quoting *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977)).

■ While the district court offered sufficient explanation for its fee award, we find that the record does not support a finding of "clear evidence" of bad faith. First, appellant's argument that reconditioning costs constitute a permissible measure of damages is at least colorable. *See Internatio, supra,* 602 F.2d at 50 (courts may use methods of computing damages other than fair market value test where necessary). Second, the record contains at least some evidence supporting appellant's arguments (1) that its purchaser, Sekiyu, rejected the cargo because of discoloration and water contamination and not, as the district court found, because of high sulphur content, *see* Pl. Ex. 14 at 3; (2) that reconditioning was necessary and did in fact occur, *see* Pl. Ex. 14 at 9; (3) that

appellant intended to and could, under applicable regulations, sell the fuel as home heating oil, *see* App. 428; and (4) that appellant therefore suffered a compensable loss.

Accordingly, we find that appellant's conduct did not reach the level justifying an award of reasonable costs and attorneys' fees, and therefore we reverse the order imposing sanctions.