**M. PRUSMAN LTD. and Sahar Insurance Co. Ltd., Plaintiffs,**

v.

**The M/V NATHANEL, her engines, boilers, etc.; and against Javelin Line; Iscont Shipping Ltd.; Sarin Ltd.; and Rarial Leasing Ltd., Defendants.**

**No. 85 Civ. 9485 (RWS).**

United States District Court, S.D. New York.

March 31, 1988.

MEMORANDUM OPINION

SWEET, District Judge.

Plaintiffs M. Prusman Ltd. ("Prusman") and Sahar Insurance Co. Ltd. ("Sahar") have moved for an order pursuant to Fed. R.Civ.P. 56 granting summary judgment against defendant Javelin Line ("Javelin") for damages sustained to plaintiffs' cargo while in Javelin's custody on board the M/V NATHANEL. By the opinion dated September 23, 1987, familiarity with which is assumed, partial summary judgment was granted for plaintiffs holding Javelin liable for the cargo damage. Upon the findings and conclusions set forth below, summary judgment is granted for plaintiffs against Javelin for damages in the amount of $28,-119.93, together with interest and costs.

*Facts*

The facts material to plaintiffs' claim for damages are not in dispute and are set forth in plaintiffs' statement pursuant to Rule 3(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York, together with supporting affidavits and exhibits.

Plaintiffs commenced this maritime action to recover for damages to their cargo of electrical convection heaters carried on board the M/V NATHANEL from the port of Hamburg to the port of Ashdod, Israel during the period from October to December 1984. Prusman, whose office is in Jerusalem, Israel, purchased the shipment of electrical heaters on FOB Hamburg terms from Elektro–Warme–Technik of Nurnberg, West Germany, with payment to be made against a letter of credit dated June 28, 1984. The FOB invoice prices for the heaters were as follows: Model "210"— DM 61.80; Model "213"—DM 105.80. The shipment contained 272 Model 213 heaters and 692 Model 210 heaters and, therefore, had a total FOB invoice value of DM 71,-543.20.

Javelin, a division of Charles Klaus & Co. Ltd., issued clean, "on board" bills of lading for each of the two containers in question, CONU 232 171–7 and ARTU 2000 98–5. Each bill of lading was consigned to the order of Israel General Bank Ltd. of Jerusalem and specified Prusman as the "notify party." The bills of lading were negotiated and transferred to Prusman. Prusman paid ocean freight for the shipment in the sum of DM 2986.90 for each of the two containers, or a total of DM 5972.

The subject containers and their cargo were damaged while on board the M/V NATHANEL during the voyage from Hamburg to Ashdod. A marine surveyor, Menachem Katzan of M. Katzan Assessors Ltd., inspected the cargo after discharge and found substantial wetting, rusting and other physical damage to the heaters. The surveyor found all 272 Model 213 heaters damaged and 513 Model 210 heaters damaged and estimated that the damage caused a loss of value to the cargo in the sum of DM 60,190.54, or 84.132% of the FOB invoice value. The cost of freight attributable to the damaged cargo is DM 5,024.36 (*i.e.*, DM 5,972 × .84132). The total loss of value plus freight expense attributable to the damaged cargo equals DM 65,214.90, which, at the exchange rate of DM 3.12/US$ on December 5, 1984, the date of the loss, amounts to $20,902.21. In addition, the following expenses were in-

curred as a result of the cargo damage: $1,080.00 for laborers to check the cargo and $1,331.26 for survey fees and expenses. Thus, the total loss is $23,313.47.

Plaintiffs have calculated prejudgment interest on the loss in the amount of $4,806.46 using the average interest rates for six month United States Treasury bills in effect during each year from the date of the loss. Therefore the total loss, including prejudgment interest, is $28,119.93.

*Summary Judgment*

In order to grant summary judgment on plaintiffs' claim for damages, this court must determine that no genuine issue of material fact exists and that plaintiffs are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In its papers in opposition to the instant motion, Javelin contends that there are issues of fact regarding the number of cartons damaged, the number of cartons released to plaintiffs after discharge and whether the amounts claimed for a labor expense and for survey fees are duplicative. Javelin's attempt to raise an issue of fact as to these matters is unavailing.

Each carton contained two heaters. The surveyor determined the number of heaters damaged, not the number of cartons, and Javelin does not dispute the surveyor's explicit determination as to the number of heaters that were damaged. However, Javelin points to what appears to be a typographical error on page 4 of the surveyor's report which misstates the number of cartons released from customs as 219 rather than 119. As plaintiffs show, in the middle of page four, the surveyor explicitly states: "The entire consignment was sorted and the total quantity released were 226 convection heaters EWT 210 (113 cartons) and 6 cartons spare parts." Thus, there is no dispute that the surveyor found that 119 cartons were released from customs. Similarly, the abandonment certificates do not raise a material fact regarding the surveyor's specific finding as to the quantity of heaters, as opposed to cartons, that were damaged. Finally, the survey report sets forth the cost of repairs in checking the cargo as relating to the checking of the cargo by three technicians over three days at a cost of $1,080.00. This item is separate and distinct from the sum the surveyor identifies in his supplemental affidavit as due for his survey fees.

Having established that there are no material issues of fact, plaintiffs are entitled to judgment as a matter of law. The measure of damages in an action for cargo damage is the difference between the fair market value of the goods at the port of destination in the condition in which they should have arrived and the fair market value in the condition in which they actually did arrive. *Kanematsu–Gosho Ltd. v. M/T MESSINIAKI AIGLI*, 814 F.2d 115, 118 (2d Cir.1987); *C. Itoh & Co. v. Hellenic Lines, Ltd.*, 470 F.Supp. 594, 598 (S.D.N.Y. 1979). Invoice value plus the freight costs attributable to the damaged goods may be used to measure the fair market value in good condition. *C. Itoh & Co.*, 470 F.Supp. at 598.

Prejudgment interest should be granted in admiralty cases absent "extraordinary circumstances." *Ingersoll Milling Machine Co. v. M/V BODENA*, 829 F.2d 293, 310–311 (2d Cir.1987). The rule in this Circuit leaves the rate of interest used in awarding prejudgment interest within the district court's broad discretion. *Independent Bulk Transp., Inc. v. The Vessel "MORANIA ABACO"*, 676 F.2d 23, 26 (2d Cir.1982). Javelin has not objected to the use of the average interest rates paid on six month United States Treasury bills from the date of the loss, December 5, 1984, to the present. *See McCrann v. United States Lines, Inc.*, 803 F.2d 771, 774 (2d Cir.1986) (approving award of prejudgment interest in admiralty case based on six-month Treasury bill rates).

Upon the findings and conclusions set forth above, summary judgment will be granted in favor of plaintiffs in the amount of $28,119.93, together with interest and costs. The parties are directed to submit judgment on ten (10) days notice.

IT IS SO ORDERED.