**AMERICAN OIL TRADING, INC., Plaintiff,**

v.

**M/V SAVA, her engines, boilers, tackle, apparel, equipment, etc., in rem, and Croatia Line, Malta Cross Shipping Co., Ltd., Palm Star Shipping, Ltd., and Queensgate Shipping, in personam, Defendants.**

No. 97 CV 4204(NG).

United States District Court, E.D. New York.

April 7, 1999.

Alexander F. Vitale, Freehill, Hogan & Mahar, New York City, for plaintiff.

Mark C. Flavin, Carter, Ledyard & Milburn, New York City, for defendant.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

Plaintiff American Oil Trading Inc. ("AOT") asserts a claim for a maritime lien against the M/V SAVA ("the Vessel") *in rem*, as well as *in personam* claims against the Vessel's owner Croatia Line, its operator Malta Cross Shipping Co., and its charterer, Palm Star Shipping Ltd. ("Palm Star"), which is the agent for an undisclosed principal, Queensgate Shipping ("Queensgate"). Plaintiff moves for summary judgment to enforce a maritime lien against the Vessel *in rem* for the value of unpaid fuel oil ("bunkers") supplied to the Vessel in New Orleans in April 1997 and in Panama in June 1997. Plaintiff also seeks prejudgment interest and reasonable attorneys' fees.

## FACTS

The following facts are undisputed: In April 1997, defendant Palm Star requested plaintiff AOT to supply bunkers to M/V SAVA in New Orleans, Louisiana. On April 28, 1997, AOT arranged for the supply of 200 metric tons of intermediate fuel oil ("IF") and 79.95 metric tons of marine diesel fuel ("MDO") to the Vessel in New Orleans and subsequently issued its invoice No. AMT 923/97 dated May 8, 1997 in the amount of $37,770.83. Pursuant to the terms of this invoice, payment was due no later than May 28, 1997, thirty days after the April 28 delivery. In mid-June 1997, Palm Star requested AOT to supply bunkers to the Vessel in Panama on or about June 20, 1997. AOT accepted this request, but also requested Palm Star to pay $20,000 by June 23, 1997, "on account" of the $37,770.83 that was still due on the prior delivery. By a telefax dated June 18, 1997, Thames Petroleum Services AS, on behalf of Palm Star, confirmed to AOT that Palm Star would be paying AOT $20,-000 by June 23, 1997, and that AOT could use $8,673.71 to satisfy an outstanding interest invoice for Palm Star's previous late payments and apply the balance of $11,-328.29 to Invoice No. AMT 923/97 for the previous New Orleans fuel delivery. On or about June 21, 1997, AOT arranged for the provision of 100.47 metric tons of IF and 50.50 tons of MDO to the Vessel in Panama. AOT subsequently issued an invoice in the amount of $27,921.15 for this delivery. On June 24, 1997, AOT received the $20,000 payment "on account" and applied $8,673.71 to cover outstanding interest that Palm Star owed for prior late payments and applied the balance of $11,-328.29 to Invoice No. AMT 923/97 for the previous New Orleans fuel delivery, in accordance with Thames Petroleum's telefax of June 18, 1997. After this payment, a balance of $26,444.54 remained due on Invoice No. AMT 923/97.

It is undisputed that on two prior occasions, in June and July of 1996, when AOT supplied the Vessel with bunkers, vessel personnel stamped the bunker receipts with the following "Important Notice":

> The goods and services being hereby acknowledged by, receipted for and/or ordered are being accepted and/or ordered solely for the account of charterers of M/V SAVA and not for the account of said vessel or her owners. Accordingly, no lien or other claim against said vessel or her Owners can arise therefor.
>
> Malta Cross Shipping, Owners of the Bulk M/V SAVA.

AOT also supplied bunkers to the Vessel on two other, later occasions, in 1996, when it received bunker receipts that were signed by the Vessel's chief engineer, but did not have the no lien clause stamped on them; on August 30, 1996, and September 12, 1996, AOT arranged for the supply of bunkers to the Vessel in Houston and Panama, respectively, and on each occasion, the Vessel accepted the bunkers without stamping the bunker receipt with a no lien clause.

AOT acknowledges that it received copies of the bunker receipts stamped a no lien clause after it supplied bunkers to the Vessel in New Orleans in April 1997 and Panama in June 1997. AOT denies actual notice of a no lien clause in any charter party prior to that time, and the President of AOT, Adrian Little, states that "[i]f AOT had been advised by the vessel, its owners or its charterers that Palm Star, Queensgate or Thames Petroleum did not have authority to also bind the vessel *in rem,* for joint liability for the bunkers, AOT would not have delivered bunkers to the vessel."

AOT has not been paid for its supplies of bunkers to the Vessel in April and June 1997. Accordingly, it commenced the instant action by filing a verified complaint on July 23, 1997, a date on which the Vessel was within the District. After security was provided, the Vessel was released from arrest on July 28, 1997 pursuant to a stipulation.

## DISCUSSION

A motion for summary judgment is granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). Rather, it must produce specific facts sufficient to establish that there is genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**Maritime Lien**

AOT moves for summary judgment to enforce a maritime lien against the Vessel *in rem* pursuant to both the Maritime Commercial Instruments and Liens Act of 1988 ("Liens Act"), 46 U.S.C. §§ 31341–31342, and the terms of its sales contract for the value of unpaid bunkers supplied to the Vessel in New Orleans in April 1997 and in Panama in June 1997. There is no dispute that AOT has satisfied the requirements of the Liens Act by furnishing necessaries, namely, bunkers of oil, to the M/V SAVA upon the order of the time charterer of the Vessel. Defendant argues, however, that AOT improvidently extended credit to Palm Star when it provided additional bunkers in Balboa, Panama on June 21, 1997. Defendant also argues that AOT is not entitled to a maritime lien for the two deliveries at issue because the no lien stamp on certain bunker receipts placed AOT on notice that the Vessel would not be responsible *in rem* for the cost of bunkers.

■ Defendant's argument that AOT improvidently extended credit to Palm Star by delivering the second supply of bunkers in Panama at a time when Palm Star and Queensgate were in default of payment with respect to AOT's earlier New Orleans delivery is without merit. It is true that AOT extended additional credit on the first delivery, and that it then did not demand that the $20,000 it sought "on account" for that delivery be paid until June 23, 1997, after the Panama delivery on June 21. However, Palm Star's agent, Thames Petroleum Services AS, assured AOT that Palm Star would pay AOT $20,000 by June 23, 1997 (and AOT in fact did receive the $20,000 payment "on account" on June 24, 1997). These facts are insufficient to establish that AOT's limited extension of additional credit was improvident. There is no evidence in the record that AOT knew Palm Star would be unable to live up to its obligations. Most importantly, there is no evidence that AOT intended to waive its lien on the Vessel. *See* Memorandum and Order of April 5, 1999 in the related action, *Barwil ASCA, et al v. M/V SAVA, et al.*, 97–CV–4105, at 5–6.

■ After Palm Star failed to pay AOT for the June 21 delivery in Panama, AOT filed a complaint in this action on July 23, 1997, two days after the payment for this delivery became due. Thus, there can be no laches defense because AOT took reasonable steps to recover payment for its two deliveries of bunkers and did not wait an unreasonable amount of time after Palm Star's debt had accrued to seek enforcement of a maritime lien against the Vessel. *Id.* at 6–7.

The facts of this case stand in sharp contrast to those of the cases relied on by defendant in support of its argument. Thus, in *In re SeaEscape Cruises Ltd.*, 191 B.R. 944, 947 (S.D.Fl.1995), a claimant was barred from asserting a maritime lien where the customary time for the payment of invoices was thirty days, and the lienor had allowed debt to accrue for between six

to nine months. In *Gulf Oil Trading Co. v. Creole Supply*, 596 F.2d 515, 521 (2d Cir.1979), a supplier of bunkers was guilty of laches where it allowed a shipowner to exceed its credit allowance and took no steps to arrest the vessel when she was in arrears; and in *Tagaropulos, S.A. v. S.S. SANTA PAULA SS HANS ISBRANDTSEN*, 502 F.2d 1171, 1172 (9th Cir.1974), a ship chandler's maritime lien was barred by laches where the chandler could have arrested the ship on many occasions but where it waited over two years before taking any action to recover even a partial payment of the bill.

 Defendant also argues that the no lien provision stamped on AOT's bunker receipts for two prior deliveries in 1996 precludes AOT's maritime lien in this action because it placed AOT on notice that the Vessel would not be responsible *in rem* for the cost of subsequent bunkers ordered by the time charterer. Actual notice of a no lien provision or of other lack of authority to order necessaries defeats a maritime lien because "[t]he supplier is then in a position to make an informed business decision, and may refuse to supply the vessel, make other arrangements for payment, or assume the risk." *Gulf Oil Trading Co. v. M/V CARIBE MAR*, 757 F.2d 743, 749 (5th Cir.1985). The party seeking to bar a supplier's maritime lien has the burden of proving that the supplier actually knew of a no lien clause in the charter party or other contract. *Ceres Marine Terminals, Inc. v. M/V HARMEN OLDENDORFF*, 913 F.Supp. 919, 924 (D.Md.1995) (citations omitted).

In *M/V CARIBE MAR*, Gulf Trading Co. ("Gulf") hired an independent contractor to deliver fuel bunkers to the vessel. Before the fuel was delivered, the vessel's master delivered papers to the independent contractor advising it of the no lien clause. Thereafter, the vessel's owners sent a letter directly to Gulf, informing Gulf of the no lien term of the charter. Gulf later provided a second supply of fuel to the vessel. The charterer failed to pay for either fuel delivery, and Gulf brought an action against the vessel, asserting maritime liens with respect to both deliveries. The Court of Appeals for the Fifth Circuit affirmed the district court's holding that Gulf had a valid maritime lien for the first delivery, but not for the second. Since Gulf had received the letter informing it of the no lien provision before the second delivery of fuel to the vessel, Gulf was not entitled to assert a lien with respect to that delivery.

 Here, defendant has failed to meet its burden of establishing actual notice to AOT. *See, e.g., Gulf Oil Trading Co. v. M/V FREEDOM*, No. 84–425FR, 1985 WL 4787, *2 (D.Or. July 25, 1985) (distinguishing M/V CARIBE MAR where a letter was delivered to Gulf advising it of the no lien clause and observing that "the primary purpose of the [bunker] receipt is for use in the billing process ... not to transmit information dealing with credit"); *Empire Scott Stevedoring, Inc. v. M/V STEVNS PEARL*, No. Civ. 96–1818, 1998 WL 614655, *3 (E.D.La. Sept.10, 1998) (finding that "the stamp affixed to a number of invoices or mate's certificates is simply not enough to afford actual notice of a 'no lien' provision to the stevedore or terminal"); *M/V HARMEN OLDENDORFF*, 913 F.Supp. at 926 (distinguishing M/V CARIBE MAR on the grounds that the language of the no lien provision on the bunker stamp in that case was more explicit and that Gulf received a letter which gave it actual notice of the lien prohibition).

Even defendant's effort to demonstrate a pattern of stamping bunker receipts to plaintiff with a no lien clause is unsupported by the facts, which show inconsistency in stamping bunker receipts with a no lien clause. Indeed, the two receipts received by plaintiff just prior to the first of the two deliveries at issue here did not bear a no lien stamp. Finally, Adrian Little, the President of AOT, has filed an affidavit denying actual notice and defendant did not request, until oral argument, the op-

portunity to depose him. On this record, defendant cannot establish notice, and summary judgment is warranted on AOT's maritime lien claim.

**Prejudgment Interest and Attorneys' Fees**

■ In admiralty cases prejudgment interest "should be granted in the absence of exceptional circumstances." *Magee v. United States Lines, Inc.*, 976 F.2d 821, 822 (2d Cir.1992) (citations omitted). No such circumstances exist here, and defendant does not dispute that plaintiffs are entitled to prejudgment interest. Accordingly, such interest will be awarded.

It is within the broad discretion of the district court to determine the rate of interest and the date on which it commences. *Independent Bulk Transp., Inc. v. VESSEL "MORANIA ABACO"*, 676 F.2d 23, 27 (2d Cir.1982); *Standard Marine Towing Services, Inc. v. M.T. DUA MAR*, 708 F.Supp. 562, 569 (S.D.N.Y.1989). Here, I find that prejudgment interest shall be calculated on the average yield of six-month Treasury Bills from July 21, 1997 through the date of judgment. *See McCrann v. United States Lines, Inc.* 803 F.2d 771, 774 (2d Cir.1986); *M. Prusman Ltd. v. M/V NATHANEL*, 684 F.Supp. 372, 374 (S.D.N.Y.1988); *New England Petroleum Co. v. O/T SONJA*, 732 F.Supp. 1276, 1286 (S.D.N.Y.1990).

■ AOT's request for attorneys' fees is denied. Attorneys' fees are not "necessaries" as defined by the Liens Act. *Bradford Marine, Inc. v. M/V SEA FALCON*, 64 F.3d 585 (11th Cir.1995); *James Creek Marina v. VESSEL MY GIRLS*, 964 F.Supp. 20 (D.D.C.1997).

### CONCLUSION

AOT's motion for summary judgment is granted, except that its request for attorneys' fees is denied. The Clerk of Court is directed to enter judgment against the M/V SAVA in the total undisputed amount of $54,363.69, plus prejudgment interest, as calculated in accordance with this order.

**SO ORDERED.**