**OT AFRICA LINE LIMITED, Plaintiff,**

v.

**FIRST CLASS SHIPPING CORPORATION and Chatham Reinsurance Corporation, Defendants.**

**No. 99 CIV. 10859 WHP.**

United States District Court, S.D. New York.

March 14, 2000.

Peter J. Gutowski, Freehill, Hogan & Mahar, New York City, for OT Africa Line Limited.

W. Shelby Coates, Jr., Oyster Bay, NY, for First Class Shipping Corp.

John G. Poles, Poles, Tublin, Patestides & Stratakis, LLP, New York City, for Chatham Reinsurance Corp.

## ORDER

PAULEY, District Judge.

Plaintiff OT Africa Line Ltd. ("OTAL") moves for partial summary judgment against defendant First Class Shipping ("First Class") for the balance of freight OTAL claims First Class owes—$43,350. OTAL's motion for summary judgment is granted for the reasons set forth below.

## FACTS

OTAL provides ocean cargo-carrying services for carriage of goods by water. First Class is a non-vessel operating common carrier ("NVOCC"). First Class provides transportation of cargo by water without actually operating the vessels. First Class does this by purchasing transportation from a vessel operating common carrier, such as OTAL, and resells these services to others. First Class is deemed a "common carrier" vis-a-vis its own shipping customers, but a "shipper" vis-a-vis OTAL.

On June 1, 1999, OTAL and First Class entered into a marine services contract. Under this contract, OTAL agreed to carry cargo for First Class from various U.S. ports to ports in Africa pursuant to First

Class's agreement to commit to using OTAL to send a minimum of 250 twenty foot equivalent dry-van container units ("TEU") over a period of one year, and to tender to OTAL agreed upon freight charges (the "June Agreement"). Under the June Agreement, First Class was to pay for the freight within 14 days after leaving the U.S. ports. The June Agreement states in pertinent part:

*PAYMENT*

Payment for freight and any surcharges must be prior to release of bills of lading by carrier and in any event within 14 days of sailing from the U.S. ports of exit. Failure to make due payment by this date shall constitute a breach of the service contract. Rates contained within this contract are on a freight prepaid basis only. . . .

First Class claims that the June Agreement was modified by correspondence between Ron Jacops, the president of First Class, and Ronald McIntyre, Vice President of OTAL. According to Jacops, First Class sought to gain a further rate advantage by enlarging its commitment to provide OTAL with 1,000 TEU. Jacops has provided three letters between McIntyre and himself documenting discussions about possibly expanding the commitment. In the first letter, dated June 22, 1999, Jacops offers to commit to 1,000 TEU if OTAL will lower the freight rates. (Jacops Decl. Ex. A.) In the second letter, McIntyre hints that he might be interested but needs more information. (Jacops Decl. Ex. A.) In the third letter, Jacops provides McIntyre with the prices needed to close the deal. He also adds that he hopes they can come to an agreement. (Jacops Decl. Ex. A.)

The parties entered into a second agreement on July 15, 1999. The second agreement reflects First Class's commitment to 1,000 TEU and a revised freight rate (the "July Agreement"). (McIntyre Decl. Ex. 1.) The July Agreement contains the same "Payment" clause as the June Agreement, requiring First Class to tender payment 14 days after OTAL leaves a U.S. port. (McIntyre Decl. Ex. 1: July Agreement ¶ 10.)

Jacops alleges that "upon information and belief" McIntyre orally promised him before the July Agreement was executed that OTAL would not enforce the "within 14 days of sailing" payment clause "owing to the mutually understood nature of the West African Market— that being the high probability that [First Class's] NVOCC customers would only pay them the freights after [the cargo] arriv[ed] at [its] final destination." (Jacops Decl. ¶ 8.) Jacops has not offered any evidence of this parol agreement. He states, however, that the parties operated under this understanding until September 1999, when OTAL "sprung" a $100,000 "cap" on the arrangement. (Jacops Dec. ¶ 9.)

McIntyre claims that there was no such arrangement, which explains why the July Agreement contains an unamended "Payment" clause that requires payment before delivery of the goods. McIntyre also explains that OTAL put a cap on First Class because shortly after the Second Agreement was signed, First Class began to fall behind on its obligations to pay freight.

Nonetheless, OTAL continued to ship cargo for First Class. When First Class did not make payments timely, OTAL put the shipments on "hold." Jacops understands "hold" to mean that OTAL left cargo stranded in Antwerp and Belgium and never delivered it to Africa. (Jacops Decl. ¶ 12.) McIntyre explains that "hold" means that OTAL will not release the cargo until payments are made. According to McIntyre, the shipments did arrive in Africa. However, during the latter part of 1999, a significant number of cargo containers were backing up at various ports in Africa because First Class was not making timely payments. (McIntyre Reply Decl. ¶ 13.) OTAL elected to store several of those containers in North Europe because the storage charges there are cheaper than in Africa and because in African

ports, cargoes are seized when they languish beyond a limited period of time. (McIntyre Reply Decl. ¶¶ 13–16.)

When the complaint was filed, OTAL claimed that the outstanding freight and other charges First Class owed totaled approximately $203,231.10. This amount has been declining due to payments OTAL received both from First Class and First Class's customers. In addition, OTAL has applied any surplus received from First Class's customers to the outstanding balance. When OTAL filed its motion for summary judgment, it claimed that First Class owed freight on 20 bills of lading for a total of $48,200. Since then, OTAL has received freight on two more bills of lading. As of February 25, 2000, OTAL claims that First Class owes a total of $43,350 on eighteen bills of lading. First Class disputes this amount and addresses each bill of lading separately.

First Class asserts that the payment terms on ten of the bills of lading was shifted to "freight collect," under the alleged oral agreement between Jacops and McIntyre, and therefore these freight payments are not due until First Class's customers pay First Class. OTAL claims that this shifting of payment plans is not authorized under the July Agreement and was not agreed to by OTAL.

Jacops speculates that perhaps its customer Guardship has paid OTAL for bill of lading BA0133. OTAL states that it has received no payment from Guardship.

Jacops claims that the container in connection with bill of lading BA015, was authorized for release and that the freight was paid. OTAL has no confirmation that the freight has been paid.

Jacops claims that he authorized First Class customer Express Shipping to pay the outstanding freight on bills of lading BA0180 and BA0187. OTAL states that it

has received payment for BA0187 from Express Shipping, but that freight on BA0180 is still outstanding.

Jacops claims that a portion of the amount due on bill of lading BA0209 was paid to OTAL from the funds attached at Chase Manhattan Bank. OTAL agrees but asserts that $1,400 is still owed on this bill of lading. Jacops does not dispute that $1,400 is still owed.

Jacops claims that First Class issued a check to OTAL for $12,500. Since the amount owed on bill of lading NY0203 is $12,500, Jacops claims that this bill of lading has been paid off. OTAL explains that First Class made a payment on invoice number FSCU 603377. The outstanding bill of lading NY0203 involves invoice number FSCU–6033377. OTAL claims payment on B/L N.Y. 0203 is still outstanding.

Jacops claims that "on information and belief," freight owed on bill of lading N.Y. 0208 has been resolved. According to OTAL, it has not.

Jacops also claims "upon information and belief," that First Class paid the outstanding $100 owed on bill of lading N.Y. 0208 on January 21, 2000. OTAL states that it has received no such payment.

Jacops claims that the profits OTAL will receive from payments First Class customers will make directly to OTAL for bills of lading NY0268, NY0284 and NY0285 will cover the amount First Class owes on bill of lading SV0058. OTAL states that it has not received any profits on N.Y. 0268, 0184 and 0285 and the freight on bill of lading SV0058 is still due and owing.[1]

## DISCUSSION

### I. *Summary Judgment Standards*

On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Donahue v. Windsor Locks Bd. of*

---

1. As for B/L No. BA 0112, First Class claims that on January 19 and 31, 2000, it permitted OTAL to release the shipment and authorized OTAL to collect payment. First Class claims

that this was does and now OTAL owes it $1,750.00 from this transaction. OTAL responds that it is not claiming payment on this bill of lading.

*Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987). To prevail on a motion for summary judgment, the moving party therefore must show that there are no such genuine issues of material fact to be tried, and that he or she is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," which includes identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, 91 L.Ed.2d 265.

Once a motion for summary judgment is made and supported, the non-moving party must set forth specific facts that show that there is a genuine issue of material fact to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be considered by the Court, the material fact must be admissible or useable at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Although a court considering a motion for summary judgment must view all evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor, *see Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If, based on the submissions to the court, no rational fact-finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505, 91 L.Ed.2d 202.

II. *Payment For Freight Is Due No More Than Fourteen Days of Sailing From U.S. Ports*

■ First Class, citing *Trans–Oceanic Peace Corp. v. India Supply Mission,* 325 F.Supp. 474 (S.D.N.Y.1971), argues that under maritime law, freight is not earned until the goods are delivered. Since OTAL put First Class's shipments on "hold" and did not deliver the goods to Africa, First Class does not owe the freight.

Construing the facts in defendant's favor, as this Court must on summary judgment, and assuming that "hold" means that the cargo was never sent to Africa but held over in Northern Europe, this reasoning is still unpersuasive. In *Trans–Oceanic,* Judge Weinfield stated that while the general rule is that freight is not earned until the goods are delivered, this rule can be altered by agreement. Here, the parties expressly altered the general rule and agreed that payment for freight and any surcharges would be paid prior to the release of the bills of lading *"and in any even within 14 days of sailing from the U.S. ports of exit."* (July Agreement ¶ 10, emphasis added.)

III. *Parol Evidence Is Insufficient to Defeat Summary Judgment*

The parol evidence rule provides in substance that under admiralty law, where the parties have reduced their agreement to writing, evidence of prior or contemporaneous agreements may not be offered to contradict, vary, or subtract from the terms of the writing. *See Wallace Steel, Inc. v. Ingersoll–Rand Co.,* 739 F.2d 112, 115 (2d Cir.1984); Restatement (Second) of Contracts § 213 (1981). The purpose of the rule is to avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract. In the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow one party " 'to substitute his view of his obligations for those clearly stated.' " *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987, 994 (S.D.N.Y.1968)).

■ Here, Jacops states: "It was my understanding from the May 1999 negotiations and, upon information and belief, also the understanding of Mr. McIntyre that the 'within 14 days of sailing' payment clause ... would not be enforced owning to the mutually understood nature of the West African Market ...." (Jacops Decl. ¶ 8.) First, Jacops has not stated when or where this alleged conversation took place or the sum and substance of the conversation. Second, this conversation appears to have taken place before the July Agreement was executed. The July Agreement clearly states that payment must be made 14 days after sailing. Jacops' recollection of some undated conversation with McIntyre prior to time the parties entered into the July Agreement is classic parol evidence, and cannot be used to contradict the unambiguous payment clause in the parties' subsequent written contract.

### IV. *Course of Dealing*

■ First Class alleges that the parties' course of dealing modified the Second Agreement. Under Admiralty law, contractual obligations may be modified in practice by a course of dealing. *See Chilewich Partners v. M.V. Alligator Fortune,* 853 F.Supp. 744, 754 (S.D.N.Y.1994).

First Class claims that until September 1999, it only paid OTAL after its customer's paid First Class. However, First Class has not provided any evidence of this course of dealing. Instead, First Class has submitted two letters to this Court, which, far from supporting this proposition, show that in September 1999, one and a half months after the July Agreement was executed, OTAL capped First Class because it owed OTAL over $100,000. This is precisely the conduct that OTAL claims constituted a breach of contract.

■ Similarly, OTAL's occasional acceptance of payments from First Class's customers' cannot establish a course of dealing. OTAL explains that in order to mitigate its damages, it had to accept payments from First Class's customers, and

that if it did not, that would have constituted a failure to mitigate damages. For this Court to hold that OTAL's occasional acceptance of payments from First Class's customers estops OTAL from pursuing its rights under the July Agreement would unfairly punish OTAL for mitigating its damages and effectively discourage cargo carrying shippers from pursuing mitigation.

### V. *Factual Challenges to the Bills of Lading*

Finally, First Class's challenges to the bills of lading lack any factual support and are insufficient to defeat OTAL's motion for summary judgment.

Because this Court finds that First Class has offered no admissible evidence to rebut the plain meaning of the payment clause in the Second Agreement, Jacops' argument that the sums owed on ten bills of lading have been shifted to "freight collect" is unavailing.

Jacops' unsupported speculation that Guardship has perhaps paid OTAL for the freight owed on bill of lading BA0133 is insufficient to defeat summary judgment. *See Bridgeway Corp. v. Citibank,* 201 F.3d 134, 142 (2d Cir.2000) (citing *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.")).

Similarly, First Class has not presented any evidence to support Jacops' assertion that for bill of lading BA0151, the container was authorized for release and that freight was paid.

As for bills of lading BA0180 and BA0187, Jacops unsupported assertions that he authorized First Class customer Express Shipping to pay the outstanding freight are unavailing. OTAL has received a payment for BA0187 from Express Shipping, but BA0180 is still outstanding. With respect to BA0180, regardless of whether Jacops authorized Express Shipping to pay the outstand-

ing freight, the fact is that it is still owed and under the Second Agreement, First Class is responsible for this freight.

As for bill of lading BA0209, Jacops does not dispute that $1,400 is still owed OTAL.

As for bill of lading NY0203, OTAL has explained and provided documentation that First Class made a payment on invoice number FSCU 603377 FSCU–6033377, and that payment on B/L N.Y. 0203 is still outstanding. First Class has not offered any evidence to the contrary.

■ Jacops' claim that "on information and belief," freight owed on bill of lading NY0208 has been resolved is entirely insufficient to overcome a motion for summary judgment. *See Baker v. Latham Sparrowbush Assoc.*, 72 F.3d 246, 255 (2d Cir.1995) (allegation made solely upon information and belief and without any supporting evidentiary facts cannot be considered on a motion for summary judgment).

Finally, Jacops' contention that OTAL should apply its profits from First Class's customers' payments on bills of lading NY0268, NY0284 and NY0285 to pay off freight owed on lading SV0058 is unavailing. OTAL states that it has no profits from these bills of lading. More importantly, First Class does not deny that the freight on this shipment is due, and under the July Agreement, First Class alone is responsible for the freight on this bill of lading.

## VI. *Pre–Judgment Interest*

■ It is a well established general principle that courts should grant "prejudgment interest in admiralty [actions] ... in the absence of exceptional circumstances." *See, e.g., Jones v. Spentonbush–Red Star Co.*, 155 F.3d 587, 593 (2d Cir. 1998); *Mentor Ins. Co. v. Brannkasse*, 996 F.2d 506, 520 (2d Cir.1993). In the Second Circuit, the rate of interest used in awarding pre-judgment interest is within the court's discretion. *See, e.g., Mentor Ins.*, 996 F.2d at 520; *Ingersoll Milling Mach.*

*Co. v. M/V BODENA*, 829 F.2d 293, 311 (2d Cir.1987) ("The rule in this Circuit ... is that the rate of interest used in awarding prejudgment interest rests firmly within the sound discretion of the trial court."). However, the rate of interest awarded should be sufficient to make the plaintiff whole. *See, e.g., McCrann v. United States Lines, Inc.*, 803 F.2d 771, 774 (2d Cir.1986) (holding that "it is wholly proper to award the unadjusted market rate of interest, which includes an inflationary component, since that is the rate at which appellee could have invested the money"); *Independent Bulk Transp., Inc. v. Vessel "MORANIA ABACO"*, 676 F.2d 23, 26 (2d Cir.1982) ("plaintiff is entitled to the income which the monetary damages would have earned"); *Zim Israel Navigation Co. v. 3–D Imports, Inc.*, 29 F.Supp.2d 186, 193 (S.D.N.Y.1998) ("The allowance of [pre-judgment] interest is not punitive but instead is compensation for the use of money that the prevailing party is entitled to but which its adversary had use of prior to judgment.")

■ While the interest rate is discretionary, most courts in this Circuit have found that the most appropriate rate is the average interest rate paid on United States Treasury Bills over either a six or twelve-month period. *See, e.g., McCrann*, 803 F.2d at 774 (approving award of prejudgment interest in admiralty case based on six-month Treasury bill rates); *ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, 1999 WL 447444 (S.D.N.Y.1999) (applying interest rate paid on six-month Treasury Bills); *Barwil ASCA v. M/V SAVA*, 44 F.Supp.2d 484, 489 (E.D.N.Y. 1999); *Zim Israel Navigation*, 29 F.Supp.2d at 193–94 (same); *Weeks Marine, Inc. v. John P. Picone, Inc.*, 1998 WL 717615, *9 (S.D.N.Y.1998) (applying 12 month average Treasury Bill rate); *Turecamo Maritime, Inc. v. Weeks Dredge No. 516*, 872 F.Supp. 1215, 1235 (S.D.N.Y.1994) (same); *J.C.B. Sales Ltd. v. M/V SEIJIN*, 921 F.Supp. 1168, 1174 (S.D.N.Y.1996) (applying rate of short-term, risk-free U.S.

Treasury obligations), *aff'd*, 124 F.3d 132 (2d Cir.1997); *M. Prusman Ltd. v. M/V NATHANEL*, 684 F.Supp. 372, 374 (S.D.N.Y.1988) (applying interest rate paid on six-month Treasury Bills); *cf. Independent Bulk Transp.*, 676 F.2d at 27 (pre-judgment interest award should be based on "short-term risk-free obligations"). Accordingly, this Court orders that for the period from fourteen days after the date of each shipment at issue in this case until judgment, interest shall be calculated based on the average interest rate paid on six-month United States Treasury Bills.

## CONCLUSION

For these reasons, OTAL's partial motion for summary judgment against First Class in the amount of $43,350 owed as of February 25, 2000, is granted together with interest.

SO ORDERED: