**JAMES CREEK MARINA, Plaintiff,**

v.

**VESSEL MY GIRLS (a.k.a. My Girl II and Jenny Lynn) In Rem, and John Singleton In Personam, Defendant.**

**Civil Action No. 97–0423 (PELF).**

United States District Court, District of Columbia.

May 29, 1997.

---

Lisa Petti Ellis, Ellicott City, MD, for plaintiff.

Thomas J. Whalen and Evelyn D. Sahr, Washington, DC, for defendants.

### MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

On March 5, 1997, the Court issued an *ex parte* order for arrest of the vessel My Girls, pursuant to Rule C(3) of the Supplemental Rules to the Federal Rules of Civil Procedure for Certain Admiralty and Maritime Claims, on plaintiff's filing of a verified complaint alleging that defendant John Singleton had failed to pay boat storage fees. On April 30, 1997, the parties filed a praecipe stating that a settlement had been reached and that settlement documents were being finalized. The Court therefore entered an Order dismissing the case without prejudice to enable the parties to consummate the settlement. After a thirty-day period, the case would have been dismissed with prejudice if the parties had not moved to reopen.

Prior to the consummation of the settlement, defendant filed a Motion for Relief from the Court's Order of Dismissal and a Motion for Prompt Hearing, alleging that plaintiff was not a legally cognizable entity with the capacity to sue—or to settle. On May 22, 1997, the Court held a status conference and directed the parties to report to Magistrate Judge Alan Kay in order to make one last attempt at settlement. After these settlement discussions failed, the Court convened a hearing later that day to consider: (1) defendant's Motion for Relief; (2) whether the arrest of the vessel should be vacated pursuant to Rule E(4)(f), Supp. R. Adm.; and (3) whether to release the boat upon the posting of a proper bond pursuant to Rule E(5), Supp. R. Adm. At the hearing, the Court stated its intention to grant plaintiff's motion to vacate dismissal and reopen the case.

 Upon consideration of the arguments presented by counsel, the exhibits submitted by plaintiff during argument and all of the papers filed in this matter, it is not entirely clear who is the real party in interest for purposes of prosecuting this case. The Application for License is captioned "James Creek Marina." Verified Complaint, Ex. B. The Annual Boat Storage License Agreement and the Addendum to the Agreement seem to identify James Creek Marina as the entity making the agreements. They are headed "James Creek Marina," but the headers of both documents also indicate that James Creek Marina is "operated by Wes-

trec Properties, Inc. for National Park Service" *Id.* The Addendum is signed by the manager of James Creek Marina. *Id.* At the same time, the Licensor identified in the Agreement itself is "Washington D.C. Associates, a California general partnership," located at James Creek Marina. *Id.* The body of the Agreement states that the "Licensor is the Concessioner and operator of James Creek Marina." *Id.* Plaintiff's Exhibit 2, submitted during oral argument, is a receipt apparently issued to John Singleton and headed "James Creek Marina, A Westrec Property." Pl. Ex. 2. Plaintiff's Exhibit 3, also submitted during argument, is a 1988 concession contract between the United States Department of the Interior, National Park Service and "Marine Management, Inc.—d.b.a. James Creek Marina." Pl. Ex. 3.

From the evidence before it, the Court concludes that James Creek Marina is, at best, a business name, not a corporation or a partnership. At worst, it is merely a physical location operated by as many as three different companies at various times. Rule 17(a) of the Federal Rules of Civil Procedure provides that a real party in interest authorized to prosecute a lawsuit may be "[a]n executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute...." There is no evidence that James Creek Marina is any of the persons or entities listed in Rule 17(a), Fed. R.Civ.P., or that it is an individual, a corporation, a partnership or an unincorporated association authorized to sue under federal law or under the laws of the District of Columbia. *See* Rule 17(b), Fed.R.Civ.P.

The Federal Maritime Lien Act provides that only "a person" may establish a maritime lien or bring a civil action to enforce it. *See* 46 U.S.C. § 31342(a). James Creek Marina has failed to demonstrate that it is a "person," whether a natural person or a legal entity such as a corporation or partnership, that is entitled to establish or enforce a maritime lien. Furthermore, Rule 17(b) of the Federal Rules of Civil Procedure makes no provision for suits to be brought solely in

a business name. Physical locations also lack the capacity to sue. *See Coeur D'Alene Lake v. Kiebert,* 790 F.Supp. 998, 1006 (D.Idaho 1992) (dismissing object of nature as a plaintiff for lack of capacity). James Creek Marina therefore is not the real party in interest and does not have the capacity to sue under Rule 17, Fed.R.Civ.P. The real parties in interest that may have the capacity to sue in this case may be one or more of the following: Marine Management, Inc., a Washington, D.C. corporation; Washington D.C. Associates, a California general partnership; and Westrec Properties, Inc., a corporation.

Because plaintiff is not a legal entity and lacks the capacity to sue, defendant has asked the Court to dismiss this case and release defendant's vessel. Such an uncompromising result is not authorized by Rule 17(a) of the Federal Rules, however, which expressly provides: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest...." Rule 17(a), Fed.R.Civ.P. *See also Link Aviation, Inc. v. Downs,* 325 F.2d 613, 614 (D.C.Cir. 1963). The Court therefore will give plaintiff 20 days to amend its complaint by joining or substituting the entity or entities that ultimately are the real parties in interest in this case with the capacity to sue.

With respect to the propriety of the arrest of defendant's boat, plaintiff has demonstrated to the satisfaction of the Court that the arrest of the vessel was indeed proper and should not be vacated. The Federal Maritime Lien Act, 46 U.S.C. § 31342(a), provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—(1) has a maritime lien on the vessel; [and] (2) may bring a civil action in rein to enforce the lien...." A maritime lien can be enforced through an *in rem* action and by a court's issuance of an arrest warrant. *See* Rules C(1), C(3), Supp. R. Adm. Exhibit C to plaintiff's verified complaint is a statement for monthly slip fees and other charges, and the defendant does not dispute the fact that he indeed owes

payment for certain "necessaries" provided for his boat under the Annual Boat Storage License Agreement described above. The Court therefore finds that the arrest of the boat in this case was proper and should not be vacated.

■ Despite a proper arrest of the vessel, defendant seeks release of his boat and offers to post security pursuant to Rule E(5)(a), Supp. R. Adm., which provides:

> [W]henever ... process in rein is issued the execution of such process shall be stayed, or the property released on the giving of security, to be approved by the court or clerk, or by stipulation of the parties conditioned to answer the judgment of the court or any appellate court.... In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller.... [1]

Defendant maintains that the amount of the security required should be limited to the amount actually owed for the "necessaries" that were provided to defendant's boat, i.e., the overdue dock fees and other fees related to the storage of his boat. Plaintiff argues that the term "necessaries" also includes the attorneys' fees that plaintiff incurs in enforcing its maritime lien. Plaintiff bases this argument on the fact that the Annual Boat Storage License Agreement signed by defendant provides that "[a]ll expenses, including attorneys' fees and costs, incurred by Licensor in connection with the enforcement of its rights under this Agreement, including right to liens, maritime and otherwise, and fees and costs incurred in any lien action,

shall be paid by Licensee...." Verified Complaint, Ex. B.

Contrary to plaintiff's argument, "necessaries" are only "repairs, supplies, towage, and use of a dry dock or marine railway." 46 U.S.C. § 31301(4). Necessaries do not include attorneys' fees. *Bradford Marine, Inc. v. M/V Sea Falcon,* 64 F.3d 585, 587 (11th Cir.1995). The amount of the bond that defendant must post to obtain the release of his boat therefore must be based only on the amount of plaintiff's claim, "fairly stated," for the overdue boat storage fees and other storage-related costs.

Apparently a slip rental fee of $198.00 (minus a $16.50 promotional credit) together with a dock box fee of $10.00 was charged to defendant on a monthly basis. Verified Complaint, Ex. C. Defendant has allegedly failed to make payments since August 1995. Verified Complaint at ¶ 6. In October 1995, James Creek Marina began charging defendant the higher "transient rate" to store his boat. Verified Complaint, Ex. C.[2] It appears to the Court that in addition to charging the transient rate, James Creek Marina also continued to charge defendant the monthly rate of $198.00. *See id.* The Court will not calculate security based on what appears to be "double billing" on the part of James Creek Marina. The Court will set the amount of security based only upon the unpaid monthly fees and subsequent unpaid transient fees.

According to the Court's calculation, defendant's allegedly unpaid monthly and transient fees total twenty thousand five hundred forty-two dollars and sixty-seven cents ($20,542.67). The defendant is entitled to release of the vessel on the posting of security in that amount plus twelve percent for interest and court costs. *See* Rule E(5)(c), Supp. R. Adm. Defendant may post a 10 percent surety bond. Accordingly, it is hereby

---

1. Plaintiff argues that Rule E(5)(b) applies, requiring a bond in "at least double the aggregate amount claimed by plaintiffs." The Court disagrees. Rule E(5)(a) is the relevant provision, and it requires a bond only sufficient to cover plaintiff's claim, "fairly stated," with accrued interest and costs, and totaling *not more than* twice the amount of the claim.

2. The License Agreement provides that if the licensee fails to pay storage fees within fifteen days after the due date, the rate charged will "become a day-to-day license at the Transient (Daily) Rate posted in the Marina's offices, with such changes to take effect automatically and without further notice to Licensee." Verified Complaint, Ex. B.

ORDERED that plaintiff's Motion to Vacate Dismissal and Reschedule Status Conference is GRANTED *nunc pro tunc* as of May 19, 1997; it is

FURTHER ORDERED that the case is reopened and restored to the docket; it is

FURTHER ORDERED that Defendant's Motion for Relief is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that Plaintiff has until June 20, 1997 to amend its complaint and name the proper party or parties in interest having the capacity to sue; and it is

FURTHER ORDERED that bond is set at twenty thousand five hundred forty-two dollars and sixty-seven cents ($20,542.67) plus twelve percent for interest and court costs. Defendant may post a 10 percent surety bond. Upon proof that such a bond has been posted, the vessel My Girls will be released.

This Court strongly recommends that the parties to this suit and any other interested parties continue settlement discussions and attempt to resolve this dispute without further court involvement. Magistrate Judge Kay will make himself available, upon request, to facilitate such discussions.

SO ORDERED.