202 F.3d 315 (D.C. Cir. 2000)
 Marina Management Services, Inc.,and Lisa Petti Ellis, Appellants/Cross-Appellees
v.
Vessel My Girls, and John N. Singleton, Appellees/Cross-Appellants
 No. 99-7017, 99-7018
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued December 2, 1999
Decided February 11, 2000
Rehearing and Rehearing En Banc Denied March 29, 2000
 
 Appeals from the United States District Court for the District of Columbia(No. 97cv00423)
 Lisa P. Ellis argued the cause and filed the briefs for appellants/cross-appellees.
 Thomas J. Whalen argued the cause and was on the briefs for appellees/cross-appellants.
 Before: Edwards, Chief Judge, Rogers and Tatel, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Rogers.
 Rogers, Circuit Judge:
 
 
 1
 In this appeal and cross appeal from the grant of summary judgment to Marina Management Services, Inc., and the dismissal of John N. Singleton's counterclaims, we confront a long-pending dispute arising from efforts to collect money due by Singleton for the lease of a boat slip in the James Creek Marina in the Southwest quadrant of the District of Columbia. Regrettably, various settlement efforts did not succeed, and our review results in a remand of the case to the district court. The district court previously addressed Singleton's contention that the original plaintiff, James Creek Marina, was not the real party in interest under Fed. R. Civ. P. 17(a). James Creek Marina v. Vessel My Girls, 964 F. Supp. 20, 21 (D.D.C. 1997). Notwithstanding the filing of an amended complaint with a new plaintiff, Rule 17(a) concerns remain because the record does not indicate that the new plaintiff--"Marina Management Services, Inc., as agent for MIF Realty, LP"--is the real party in interest or authorized to sue on behalf of the real party in interest; hence the district court erred in dismissing Singleton's motion to dismiss the amended complaint under Rule 17(a). In addition, the district court's finding of a bad faith misrepresentation by Marina Management is unsupported by evidence sufficient for imposition of a sanction of a $20,000.00 reduction in the attorneys' fee award. Accordingly, although the district court did not err in finding that Singleton's contract extended beyond June 1996, or abuse its discretion in dismissing Singleton's counterclaims, we affirm in part and reverse in part.
 
 I.
 
 2
 John N. Singleton entered into an Annual Boat Storage License Agreement ("License Agreement") to lease a slip for his boat at the James Creek Marina. The License Agreement, which was signed by Singleton and the manager of the James Creek Marina, was for the period April 1, 1994 to March 31, 1995, and was extended by the parties. Under the License Agreement, Singleton, the Licensee, agreed to make monthly payments of $181.50 for the boat slip, and by the terms of § 19, upon 15 days' delinquency of a monthly installment, he would become, at the Licensor's option, "subject to a day-to-day license at the Transient (Daily) Rate posted in the Marina's offices, with such changes to take effect automatically and without further notice to Licensee."The transient rate charges were substantially higher than the monthly payment.[1] It is undisputed that Singleton became delinquent in paying his slip fees as early as 1995.[2]
 
 
 3
 On March 3, 1997, the James Creek Marina filed a verified complaint under 46 U.S.C. § 31342(a)[3] for a lien against Singleton'sboat and a money judgment of $26,015.67, plus future daily lease charges, marina fees, legal fees, and costs. Exhibit C to the complaint reflected as of February 28, 1997, both past due monthly slip fees and transient rate charges. By ex parte order, the district court directed the arrest of Singleton's boat. After a hearing, the court set the bond at $20,542.67 (plus 12% for interest and court costs), "based only upon the unpaid monthly fees and subsequent unpaid transient fees." When the district court became aware that Exhibit C did not reflect the invoices that the marina had actually sent to Singleton before the lawsuit was filed, the court reduced the bond to $6,728.17 (plus 12% for interest and court costs) and reduced the attorneys' fee award under the License Agreement by $20,000.00 as a sanction against Marina Management for having mislead the court. In the meantime, Singleton filed five counterclaims, which the district court dismissed as harassing and designed to delay resolution of the litigation.
 
 
 4
 We address in Part II, the real party in interest claim and the contract issues, in Part III, the sanction for misleading the court, and in Part IV, the dismissal of Singleton's counterclaims.
 
 II.
 
 5
 Following the district court's ruling that the James Creek Marina was not the real party in interest under Fed. R. Civ. P. 17(a),[4] see James Creek Marina, 964 F. Supp. at 22, an amended verified complaint was filed in which the plaintiff was identified as "Marina Management Services, Inc., as agent for MIF Realty, L.P., d/b/a James Creek Marina."Singleton renewed his motion to dismiss the complaint on several grounds. The district court denied the motion by summary order. On cross appeal, Singleton contends that the district court erred in denying his motion and in granting summary judgment to Marina Management on the debt because an agent cannot sue for a disclosed principal, and there is no evidence that MIF Realty, LP had acquired the contract rights between Singleton and the James Creek Marina for any preexisting debt, or that there was an outstanding contract after June 1996.
 
 A.
 
 6
 Rule 17(a) protects a defendant against a subsequent claim for the same debt underlying a previously entered judgment. See, e.g., United Fed'n of Postal Clerks, AFL-CIO v. Watson, 409 F.2d 462, 470-71 (D.C. Cir. 1969). That understanding was reflected in the district court's opinion addressing Singleton's motion to dismiss the original complaint under Rule 17(a). See James Creek Marina, 964 F. Supp. at 22. Although there is a lack of consensus in the case law regarding whether an "agent" authorized to sue based solely on a power of attorney is a real party in interest under Rule 17(a),[5]the operative question is whether the plaintiff "possesses the right to be enforced." Best v. Kelly, 39 F.3d 328, 329 (D.C. Cir. 1994) (quoting Charles A. Wright, Law of Federal Courts 490 (1954)); see also Joyner v. F & B Enterprises, Inc., 448 F.2d 1185, 1186 (D.C. Cir. 1971);[6]A Wright, Miller, and Kane, Fed. Prac. and Proc. Civ.2d §§ 1545, 1553.
 
 
 7
 As the caption of the amended complaint and the record appears to show, the stakeholder vis-a-vis Singleton's boat slip debt is MIF Realty, LP.6 Marina Management purports only to be acting as an agent for MIF Realty, LP, which as principal allegedly "possesses the right to be enforced."Best, 39 F.3d at 329. Assuming MIF Realty, LP is the stakeholder for Singleton's debt, there is nothing in the record to show that Marina Management is authorized to prosecute the instant lawsuit. Under the terms of a 1997 operating agreement, MIF Realty, LP authorized Marina Management to enforce license obligations of James Creek Marina tenants and "at the direction of Owner take such actions as may be necessary to effectuate Owner's rights under any such license agreement." The operating agreement further provides that "[o]perator acknowledges that, except as otherwise expressly provided for herein, the initiation and prosecution of lawsuits shall require the prior written consent of Owner...." Id. p 2.5. The record provides no evidence of written consent by MIF Realty, LP for Marina Management to sue Singleton for his boat slip debts. Neither is there an affidavit from MIF Realty, LP indicating consent or ratification of this lawsuit. See, e.g., Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc., 149 F.3d 794, 797 (8th Cir. 1998) (citing Fed. R. Civ. P. 17(a)). Nor is there a statement in the judgment of the district court that would protect Singleton against a subsequent claim by MIF Realty, LP for the debt that Marina Management seeks to recover. Cf. Watson, 409 F.2d at 470-71.
 
 
 8
 Accordingly, we reverse the denial of Singleton's motion to dismiss the amended complaint for noncompliance with Rule 17(a), and remand the case to allow Marina Management to supplement the record or file a second amended complaint.
 
 B.
 
 9
 Singleton also contends that the district court erred in granting summary judgment to Marina Management on the debt because there is no evidence that MIF Realty, LP had acquired the contract rights for any preexisting indebtedness for the boat slip and no evidence of an outstanding contract between Singleton and the real party in interest after the License Agreement expired in June 1996. Marina Management, in turn, contends that the district court erred in denying its claim for transient rate charges. Our review of the grant of summary judgment is de novo, viewing the record in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact as would make summary judgment inappropriate. See Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).
 
 
 10
 As to the past due slip fees, Singleton maintains that there is no evidence that either Marina Management or MIF Realty, LP was the party to whom he is indebted for the slip fees, or that MIF Realty, LP had acquired the past debts of the James Creek Marina. In his motion to dismiss the amended complaint, Singleton argued that there was no evidence that MIF Realty purchased debts owed Washington, D.C. Associates or that Washington D.C. Associates assigned MIF Realty, LP the rights in its contracts with Singleton. In opposing the motion, Marina Management submitted Exhibit D purporting to list the owners and managers of James Creek Marina since September 1988.[7] Further, Marina Management recited its efforts to provide Singleton's attorney with direct access to documents and persons who could review the chain of ownership. Singleton, in his response, demanded proof that MIF Realty, LP "has the legal right to any past obligations and current obligations" of Singleton.
 
 
 11
 The district court made no express finding that MIF Realty, LP had acquired the marina's outstanding debts and there are no documents in the record to substantiate the assertions in Exhibit D. While mere allegations may be sufficient to defeat a motion to dismiss, see Hanson v. Hoffmann, 628 F.2d 42, 43 (D.C. Cir. 1980); see also Maljack Prods., Inc., 52 F.3d 373, 375 (D.C. Cir. 1995), summary judgment was inappropriate in the absence of proof that MIF Realty, LP has the right to recover debts incurred by Singleton prior to September 1996 when MIF Realty, LP obtained the concession contract. See Crawford v. Signet Bank, 179 F.3d 926, 928 (D.C. Cir. 1999).
 
 
 12
 Singleton's contention that a second material issue of disputed fact involves whether the License Agreement was extended beyond June 1996 fails, however. In the district court, Singleton's attorney advised the court that the parties had extended their agreement in June 1996. In granting summary judgment of $7,663.21 for Marina Management, the district court apparently relied on Singleton's attorney's oral representation regarding the continuing viability of the Licensing Agreement after June 1996, using Singleton's statement of February 26, 1997, listing the amount of his debt. Singleton's attorney informed this court at oral argument that he was mistaken in representing to the district court that the parties' agreement had been extended in June 1996. His change of position comes too late: having conceded the fact of extension in the district court, he cannot alter the record now. See, e.g., United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 748 (D.C. Cir. 1998) (citing Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)); United States v. Ins. Co. of North America, 83 F.3d 1507, 1510 n.6 (D.C. Cir. 1996); McNamara v. Miller, 269 F.2d 511, 515 (D.C. Cir. 1959).
 
 
 13
 Nevertheless, because the record does not reflect a basis on which to conclude that MIF Realty, LP is entitled to recover past-due amounts from Singleton for use of the James Marina Creek boat slip, we are constrained to reverse the grant of summary judgment. In addition, in response to Marina Management's contention that it was entitled to recover transient rate charges, the district court shall consider on remand whether the plain language of the License Agreement entitles recovery for the transient rate charges reflected in Exhibit C. Although the district court ruled that Marina Management had failed to exercise its option under § 19 of the License Agreement because it had not previously billed Singleton at the transient rate, our disposition of the sanction based on Exhibit C to the complaint in Part III warrants that the district court consider anew the claim for transient rate charges based on the plain language of § 19 and the unrefuted evidence that Singleton received oral notice.
 
 III.
 
 14
 At the heart of Marina Management's appeal is its contention that the district court clearly erred in viewing Exhibit C to the complaint--the February 28, 1997, invoice--as a misrepresentation, and thus abused its discretion by imposing a sanction of $20,000.)[8] Although our review under an abuse of discretion standard is highly deferential, see In re Holloway, 995 F.2d 1080, 1086 (D.C. Cir. 1993); Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1457 (D.C. Cir. 1986), if the district court's action is based on a clearly erroneous finding of fact, that action is an abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); F.J. Vollmer Co., Inc. v. Magaw, 102 F.3d 591, 596 (D.C. Cir. 1996).
 
 
 15
 The verified complaint stated that under 46 U.S.C. § 31342(a) and the License Agreement, there was a valid maritime lien against Singleton's boat and an in personam contractual claim against Singleton for the unpaid costs of "necessaries," totaling $26,015.67, as of February 28, 1997, plus $25.50 per day for each day thereafter, plus fees, attorneys fees, and costs. Attached to the complaint was Exhibit C, a copy of a February 28, 1997, invoice from the marina for $22,065.67 that was sent to Singleton. The invoice reflected eighteen monthly lump-sum charges for slip fees at the daily transient rate from October 1995 through March 1997. The district court issued an ex parte order for the arrest of Singleton's boat on March 5, 1997, and, thereafter, pursuant to Admiralty Rule E(5)(a), determined that the amount of security that Singleton would be required to post in order to regain possession of his boat was $20,542.67.[9]
 
 
 16
 Singleton moved for reconsideration of the bond amount, arguing that, contrary to the district court's finding, Singleton had not been billed in 1995 and thereafter for transient rate charges, that Exhibit C was prepared for purposes of the litigation, and that his "account history was altered to reflect transient rates never charged to the defendant." Because the monthly invoices sent to Singleton did not reflect transient fees, Singleton's counsel maintained that Marina Management "clearly intended and did in fact mislead the Court," and, consequently, the bond calculated on the transient fees was not in an amount of Marina Management's claim " 'fairly stated' " under Rule E(5)(a). In response to the district court's inquiry whether the inclusion of the transient rate charges shown in Exhibit C represented double billing, Marina Management's attorney advised that there was no double billing because under the Licensing Agreement, transient charges, as reflected in Exhibit C, are over and above the monthly rate. When Singleton's attorney objected that imposition of the transient rate charge was not in the contract and was not a "necessary" but "a big penalty," Marina Management's attorney interjected that the transient rate was in the License Agreement.
 
 
 17
 Agreeing with Singleton's assertions, the district court reduced the bond to $6,728.17, based largely on a February 26, 1997, statement provided by Singleton showing the outstanding balance through March 1997 to be $5,936.17, and $792.00 in monthly slip fees of $198.00 incurred there after. After issuing an order to show cause "as to why sanctions should not be levied against plaintiff and its counsel for having misled the Court," the district court reduced the amount of attorney's fees to be recovered by Marina Management by $20,000. The district court found that:
 
 
 18
 The Court was misled by [Exhibit C] into believing that transient fees actually were levied and billed to [Single-ton] on the dates listed in ... [E]xhibit [C]. In addition, this was suggested, if not argued, in papers filed with the Court and during oral argument, and therefore was relied upon by the Court in calculating the amount of security.... [Marina Management] now admits that transient fees were never charged before the start of this litigation.... The Court was misled by the statement [that Marina Management] provided with its Verified Complaint and the arguments presented to it.
 
 
 19
 On appeal, Marina Management contends that there is no evidence of intentional misrepresentation or violation of Fed. R. Civ. P. 11,[10] or any rule of professional conduct, inasmuch as Exhibit C was a good faith interpretation of the parties' agreement. Maintaining that it read the Licensing Agreement to allow retroactive assessment of transient rate charges, and that, even if it erred in its reading, there was abundant evidence of its good faith, Marina Management relies on three facts in particular. First, Singleton was notified by letter terminating his license effective January 31, 1997, that under District of Columbia law he was at a minimum a hold-over tenant and the marina could charge the transient rate for continued use and occupancy of the boat slip. Second, the affidavit of the marina dock master, Steve Wiltamuth, stated that Singleton was given "constant verbal and oral notice that transient fees were going to be assessed against him if he failed to pay his marina bill." Third, there was other evidence that the marina had notified Singleton prior to assessing transient fees that it was going to do so, and that it notified Singleton's attorney of previous invoices that did not include transient rate charges. In other words, Marina Management maintains, the language of the Licensing Agreement, specifically § 19, authorized retroactive transient charges; Marina Management had exercised its option to impose such charges, giving Singleton notice beyond that required by § 19 itself; and Singleton's attorney could not reasonably argue that Exhibit C represented anything other than Marina Management's computation of its full claim in admiralty under the parties' agreement.
 
 
 20
 Rule E for admiralty and maritime claims contemplates ex parte proceedings for the arrest of property based on the filing of a complaint. See Supp. R. Adm. E(2).[11] Rule E(5)(a) provides that unless a bond amount is agreed to by the parties, "the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller."[12] A person claiming interest in arrested property is entitled to "a prompt hearing at which the plaintiff shall be required to show why the arrest ... should not be vacated or other relief granted...." Supp. R. Adm. E(4)(f).
 
 
 21
 The record indicates that the district court's conclusion that it was misled was distinct from its concern about whether there was double charging. Rather, that conclusion reflected the district court's view that it was led to understand that Exhibit C was a summary of the invoices that had actually been sent to Singleton while he had used a boat slip at the James Creek Marina, or as Singleton's attorney asserted, Exhibit C purported to be the marina's "account history" with Singleton. Upon determining that Singleton had not been billed for transient rate charges prior to February 28, 1997 (the date of the Exhibit C invoice), the district court concluded that Exhibit C not only misstated the amount that Singleton owed but was, in effect, intentionally designed to mislead the court. Even assuming no error in the district court's ruling that Marina Management misinterpreted its rights under the License Agreement, it does not necessarily follow that Marina Management acted in bad faith with respect to what Exhibit C represented. See Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 181 (D.C. Cir. 1980).
 
 
 22
 Viewed in the context of an admiralty proceeding, it was incumbent on Marina Management under Rule E to state the amount of its claim with particularity, indicating the basis for arriving at that amount, inasmuch as Singleton and the marina could not agree on the amount of the bond to be posted to secure release of his boat. See Supp. R. Adm. E(2)(a), supra n.11. Our own experience during oral argument suggests that neither counsel may have been particularly helpful in assisting the district court in understanding Exhibit C's limited purpose in support of the claimed lien. Be that as it may, we still do not find evidence of bad faith, much less an intentional misrepresentation, see United States v. Wallace, 964 F.2d 1214, 1218 (D.C. Cir. 1992) (citing Roadway Express Inc. v. Piper, 447 U.S. 752, 767 (1980)), about what Exhibit C purported to show.
 
 
 23
 Exhibit C is clearly labeled and dated, and referenced in the complaint solely in connection with Marina Management's statement of its claim under 46 U.S.C. § 31342(a) and the Licensing Agreement. Exhibit A to the complaint referenced Singleton's ownership of the boat using the boat slip at the James Creek Marina, and Exhibit B to the complaint was the Licensing Agreement dated March 1, 1994. The four page "Statement" in Exhibit C was addressed to Singleton from the marina and listed the charges, payments, and balance due as of each monthly payment date and the end of the month from March 1994 through February 1997.
 
 
 24
 Marina Management explained in its opposition to Singleton's motion to reconsider the bond amount that although, in the interests of trying to resolve this matter informally it had not previously charged Singleton the transient rate, it had not waived its right to the full amount negotiated in the Licensing Agreement, which provided, in § 19, that such rates may be applied "at the Licensor's option" and "without further notice to Licensee." In Marina Management's view, the transient rates in the License Agreement became part of the maritime lien for "necessaries," citing Hudson Harbor 79th Street Boat Basin, Inc. v. Sea Casa, 469 F. Supp. 987, 1979 AMC 2401 (S.D.N.Y. 1979), inasmuch as § 20 of the License Agreement provided that the lien for necessaries shall include "all unpaid charges."
 
 
 25
 Furthermore, Marina Management's conduct belies an intention to mislead. First, the transcript[13] reveals no affirmative misstatement by Marina Management that Exhibit C was Singleton's account history. The district court was concerned about whether the Exhibit C invoice reflected double charges--the transient rate charge in addition to the monthly fee--for the same services. Marina Management's attorney explained that "if the transient rate is a dollar per foot per day and the monthly fee is $198, then obviously you subtract that [$]198 from whatever the dollar per foot per day is."Thereafter, the district court acknowledged that the amount of the bond is tied to the amount of Marina Management's claim and determined "an appropriate bond ... [based on] what a 'necessary' is." The record on appeal reflects that Marina Management's attorney was not asked if, and did not volunteer that, Exhibit C was an account history.
 
 
 26
 Second, the record does not show that Marina Management or its attorney implied that Singleton had been billed for transient rate charges prior to February 1997. The undisputed facts that Marina Management provided Singleton's attorney with copies of the invoices sent to Singleton prior to February 1997 and the commencement of the instant litigation, and that those invoices do not reflect transient rate charges, are inconsistent with an intent to create the impression that such charges had been part of the regular prelitigation billing history.
 
 
 27
 Third, to the extent that Exhibit C on its face could be mistaken for an account history, the mere appearance of Exhibit C did not amount to an affirmative misrepresentation in view of Marina Management's independent reason for itemizing the amount it claimed was due and owing under Supp. R. Adm. E(2)(a), supra n.11. Cf. Wallace, 964 F.2d at 1219-20 (quoting Restatement (Second) Torts § 500 cmt. g (1964)). While, as a matter of prudent legal practice, Marina Management might have better clarified precisely what Exhibit C represented, the record does not support a finding of a bad faith misrepresentation by Marina Management or its attorney that Singleton had been presentedwith invoices for transient rate charges prior to February 28, 1997.
 
 
 28
 Accordingly, in the absence of a factural basis for the sanction we remand the case so that the district court may enter an order vacating the sanction.[14]
 
 IV.
 
 29
 On cross appeal, Singleton contends that the district court erred in sua sponte dismissing his counterclaims as mostly frivolous and designed primarily to harass and delay. Our review is for abuse of discretion, see Rafferty v. NYNEX Corp., 60 F.3d 844, 851 (D.C. Cir. 1995) (citing Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990)), and we find none.
 
 
 30
 In his amended answer, Singleton counterclaimed for property damage to the vessel and missing property (Counterclaim I), defamation (Counterclaim II), intentional interference with prospective contractual relations (Counterclaim III), wrongful seizure of the vessel (Counterclaim IV), and abuse of process (Counterclaim V). Singleton sought $200,000.00 in damages, costs, and attorney's fees. The district court observed in dismissing the counterclaims that:
 
 
 31
 [b]oth counsel have engaged in name-calling, personal attacks and petty arguments and have burdened the Court with repetitions of arguments already rejected. Defense counsel has filed counterclaims that appear frivolous and designed primarily to harass and delay a final resolution of this case.
 
 
 32
 The district court noted that Singleton had withdrawn the counterclaim for wrongful seizure, and that the counterclaims for defamation and abuse of process were "deficient because of their integral relationship to the legitimate pursuit by plaintiff of this lawsuit." Viewed in the context of the conduct of both counsel, the district court concluded that "all of the counterclaims should be seen as designed primarily to harass," and that "all five counterclaims therefore are properly dismissed under Rule 11 of the Federal Rules of Civil Procedure."
 
 
 33
 "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." Cooter & Gell, 496 U.S. at 393 (quoting Advisory Committee Note on Rule 11, 28 U.S.C. App. p. 576). Dismissal is a legitimate sanction under Rule 11, see Carman v. Treat, 7 F.3d 1379, 1382 (8th Cir. 1993); Rhineheart v. Stauffer, 638 F.2d 1169, 1171 (9th Cir. 1979), for serious misconduct when lesser sanctions would be ineffective or are unavailable. See Dodson v. Runyon, 86 F.3d 37, 39-40 (2d Cir. 1996); Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993). The record supports the district's court's finding that the counterclaim for abuse of process was legally deficient because of its close connection with a good faith action for recovery of a debt. See Scott v. District of Columbia, 101 F.3d 748, 755 (D.C. Cir. 1996);Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999). So too, the district court could reasonably conclude that Singleton's defamation claim, which included allegations not necessarily integrally linked to the legitimacy of the debt recovery action, nonetheless was "designed primarily to harass" in view of "the petty ... conduct of counsel for both parties....," as were his counterclaims for property damage and for intentional interference with contractual relations. Marina Management presented multiple affidavits calling into seriousdoubt Singleton's property damage claim. Without weighing the merits, this peek at the evidence, cf., e.g., Massachusetts School of Law at Andover, Inc. v. United States, 118 F.3d 776, 783 (D.C. Cir. 1997); Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc., 869 F.2d 1518, 1521 (D.C. Cir. 1989), confirms that given the contentious history of this unduly prolonged litigation, see McLaughlin v. Bradlee, 803 F.2d 1197, 1205-06 (D.C. Cir. 1986), the district court did not abuse its discretion.
 
 
 34
 Accordingly, we reverse the grant of summary judgment, remanding Marina Management's case to the district court, and affirm the dismissal of the counterclaims.
 
 
 
 Notes:
 
 
 [1]
 The transient rate is $0.75 per foot per day; because Singleton's boat is 34 feet long, his transient rate was $25.50 per day.
 
 
 [2]
 Marina Management received payments from Singleton of $181.50 on April 16, 1994, and $800.00 on August 22, 1995. However, Marina Management asserts that when the latter payment was made, Singleton was already in arrears of $3,989.17, and because his one-year prepayment was put on an invalid MasterCard account, he was "effectively in default from the first day of the [License] Agreement," thus making transient rates applicable as of April 1, 1994.
 
 
 [3]
 Section 31342(a) provides, in relevant part:
 (a) ... a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner--(1) has a maritime lien on the vessel;(2) may bring a civil action in rem to enforce the lien; and(3) is not required to allege or prove in the action that credit was given to the vessel.46 U.S.C. § 31342(a) (1999).
 
 
 [4]
 Rule 17(a) provides that:
 Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest. Fed. R. Civ. P. 17(a).
 
 
 [5]
 Compare Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17-18 (2d Cir. 1997); Airlines Reporting Corp. v. S and N Travel, Inc., 857 F. Supp. 1043, 1046-47 (E.D.N.Y. 1994) (Weinstein, J.) (citing Titus v. Wallick, 306 U.S. 282 (1939)); Corporation of the President of the Church of Jesus Christ of Latter Day Saints v. Envtl. Protection Comm'n of Hillsborough County, 837 F. Supp. 413, 415 (M.D. Fla. 1993); Mitsui & Co. (USA), Inc. v. Puerto Rico Water Resources Auth., 528 F. Supp. 768, 776 (D.P.R. 1981).
 
 
 [6]
 Exhibit D to Marina Management's opposition to the motion to dismiss states the following: in 1988, the National Park Service, which owns the James Creek Marina, and Marine Management, Inc., entered into a concession agreement that was later assigned to Washington, D.C. Associates ("WDCA"). Following a number of assignments of interest in the concession agreement, and due to the later bankruptcy of WDCA, MIF Realty, LP acquired the concession rights to the James Creek Marina in September 1996. See infra n.7. MIF Realty, LP engaged Westrec Marina Management to operate the marina. In February 1997, MIF Realty, LP terminated Westrec and hired Marina Management Services, Inc. to operate the marina.
 
 
 [7]
 Exhibit D states the following: Home Savings Association of Kansas City, F.A. ("HSA"), which formerly held an interest in WDCA's concession contract with the National Park Service as security for a note it held on WDCA, was taken into receivership by the Resolution Trust Corporation ("RTC"). On April 16, 1993, all of HSA's "rights in the James Creek Marina interest" in the concession contract were assigned by the RTC to MIF Realty, LP. When WDCA filed for bankruptcy in June 1996, MIF Realty filed a Proof of Claim, and "[p]ursuant to a Joint Plan of Reorganization proposed by [WDCA] and MIF Realty, LP, MIF Realty [was] given ownership ... of inter alia, the James Creek Marina interest" in the concession contract on September 2, 1996.
 
 
 [8]
 In light of our disposition of the sanction, we need not address Singleton's contention that Marina Management's counsel, Lisa Petti Ellis, who also appeals the sanction, lacks standing to appeal because the sanction was imposed against the client and not its attorney. Cf. Ass'n of Am. Physicians and Surgeons v. Clinton, 187 F.3d 655, 660 n.4 (D.C. Cir. 1999).
 
 
 [9]
 The district court initially set the bond amount based on the monthly charge and transient rate charges over and above the monthly fees dating back to September 1995, and other miscellaneous fees. The monthly charge consisted of the $181.50 rate in the Licensing Agreement, which included a $16.50 credit contingent upon Singleton's prepaying the entire amount in advance; because he did not prepay, the monthly charge was $198.
 
 
 [10]
 Rule 11(b) provides in pertinent part:
 By presenting to the court ... a pleading ... or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--...
 (2) the claims ... are warranted by existing law....;
 (3) the allegations and other factual contentions have evidentiary support....Rule 11(c) provides for the imposition of sanctions for violation of subsection (b). Fed. R. Civ. P. 11 (1999).
 
 
 [11]
 Rule E(2)(a) provides:
 In actions in which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, with-out moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.
 
 
 [12]
 Rule E(5)(a) on specific bonds provides that arrested property may be released upon
 the giving of security, to be approved by the court ... or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court.... In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond ... at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interests and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii)the value of the property on due appraisement, whichever is smaller.
 Rule E(5)(b) on general bonds provides that the owner:
 may file a general bond or stipulation, with sufficient surety, to be approved by the court, conditioned to answer the judgment of such court in all or any actions that may be brought....The rule further provides that "the execution of all such process against such vessel shall be stayed so long as the amount secured by such bond ... is at least double the aggregate amount claimed by plaintiffs in all actions ... in which such vessel has been ... arrested."
 
 
 [13]
 The only transcript in the record on appeal is for May 22, 1997, where the district court first sought to determine whether the case could be settled. The court, having previously dismissed the case on April 30, 1997, and having learned that settlement efforts were unproductive, then responded to Singleton's request for release of his boat pursuant to Rule E(5)(a) & (b) and to Singleton's motion to dismiss for failure to comply with Rule 17(a).
 
 
 [14]
 In view of our remand of the case for a determination of who is the proper plaintiff under Rule 17(a) and an order vacating the sanction, we do not address the merits of either Marina Management's contention that the district court erred in denying recovery of certain fees or Singleton's contention that the amount of attorneys' fees awarded "was" excessive because a substantial amount pertained to work associated with the sanction issue. These are matters to be resolved on remand.