Revised November 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 99-30909

GULF MARINE AND INDUSTRIAL SUPPLIES, INC; ET AL

Plaintiffs,

v.

GOLDEN PRINCE M/V, ETC; ET AL,

Defendants,

MURPHY, ROGERS & SLOSS, APLC

Plaintiff-Appellant,

v.

GOLDEN PRINCE M/V, HER ENGINES, TACKLE,
APPAREL, AND APPURTENANCES, IN REM;
PRINCE NAVIGATION, INC.

Defendants-Appellees,

ROYAL BANK OF SCOTLAND

Appellee

Cons/w No. 99-31293

GULF MARINE AND INDUSTRIAL SUPPLIES, INC; ET AL

Plaintiffs,

v.

GOLDEN PRINCE M/V, ETC; ET AL,

**Defendants,**

---

**MURPHY, ROGERS & SLOSS, APLC**

                                             **Plaintiff-Appellant,**

                    **v.**

**GOLDEN PRINCE M/V, HER ENGINES, TACKLE, APPAREL, AND APPURTENANCES, <u>IN REM;</u> PRINCE NAVIGATION, INC.**

                                             **Defendants-Appellees,**

---

**Appeals from the United States District Court for the Eastern District of Louisiana**

---

October 24, 2000

Before JONES and BENAVIDES, Circuit Judges, and COBB,[1] District Judge.

EDITH H. JONES, Circuit Judge:

The law firm of Murphy, Rogers & Sloss, APLC ("MRS") filed suit to establish a maritime lien on the sale proceeds of the vessel M/V GOLDEN PRINCE ("GOLDEN PRINCE"). MRS argued that legal services it provided on behalf of the GOLDEN PRINCE were "necessaries" under the Federal Maritime Law Act (FMLA), 46 U.S.C. § 31342 (2000), and that the firm therefore held a maritime lien for its attorney fees senior to a mortgage on the vessel. The district court rejected this claim, and MRS appeals. We affirm

---

[1] District Judge for the Eastern District of Texas, sitting by designation.

because under the FMLA, legal services furnished to the vessel are not "necessaries."

## BACKGROUND

The parties in interest in this case are MRS and the Royal Bank of Scotland ("Bank"). MRS is a professional law corporation based in New Orleans, Louisiana. Bank is a foreign secured creditor of the GOLDEN PRINCE.

The managers of the three vessels related to this action retained MRS in March 1998 to represent them and the owners of the vessels in a wage dispute. Current and former crewmembers, seeking wages and penalties, alleged that the owners had breached an agreement governing their pay. The claims against the vessels were substantively identical. The crewmembers seized two of the vessels, including the GOLDEN PRINCE, to enforce their claims. MRS provided legal services to settle the wage claims against all three vessels and obtained the release of the seized vessels. MRS earned approximately $136,000 in legal fees and disbursements between March 1998 and January 1999, all of which remains unpaid.

In January 1999, creditors of the GOLDEN PRINCE seized the vessel. The district court consolidated creditor suits into this action, including in rem claims by MRS and Bank. The vessel was sold at a public auction for $3.51 million. Bank holds a $60 million foreign first preferred ship's mortgage on the GOLDEN PRINCE and other vessels. If MRS does not have a maritime lien on

3

its legal fees, its claim will be inferior to Bank's mortgage and the firm will receive none of the sale proceeds.

MRS and Bank filed motions for summary judgment to establish their relative priorities. The district court granted summary judgment against MRS. The court rejected MRS's argument that the firm's legal services were "necessaries" within the meaning of 46 U.S.C. § 31342 (2000). It also ruled that MRS did not "earmark" legal services specifically to GOLDEN PRINCE to establish its claim for necessaries, and it found that MRS did not rely on the credit of the GOLDEN PRINCE to secure its fees. MRS appeals.

## STANDARD OF REVIEW

This Court reviews issues of law and denials of summary judgment de novo, applying the same standards as the district court. *See Benningfield v. City of Houston*, 157 F.3d 369, 374 (5th Cir. 1998); *Associated Metals and Minerals Corp. v. Alexander's Unity MV*, 41 F.3d 1007, 1010 (5th Cir. 1995).

## DISCUSSION

The terms of the FMLA lend little support to MRS's claim that a maritime lien secures its attorney fees. Section 31342 provides that "a person providing necessaries to a vessel . . . has a maritime lien on the vessel." 46 U.S.C. § 31342 (2000). Section 31301 states that "'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway." MRS thus

4

holds a maritime lien only if its legal services were necessaries. While the enumerated examples in § 31301 are far from exhaustive, legal services do not fit naturally into this list of traditional shore-to-ship goods and services.

MRS cites no cases classifying legal services as necessaries because there are none. The absence of precedent signifies the weakness of MRS's position, since admiralty enjoys an unusually rich legal tradition and, more than nearly any other contemporary area of federal law, relies on venerable precedents where they exist. In fact, this Court has held that maritime liens do not secure attorney fees in cases predating the FMLA. *See United States v. Knauth*, 183 F.2d 874, 878 (5th Cir. 1950) (attorneys defending ships from government seizure do not hold a maritime lien for their legal fees); *Gray v. Hopkins-Carter Hardware Co.*, 32 F.2d 876, 879 (5th Cir. 1929) (attorney who represented parties to a yacht seizure did not hold a lien for his fees). Since Congress enacted the FMLA, courts have consistently held that legal services are not necessaries. *See Bradford Marine, Inc. v. M/V SEA FALCON*, 64 F.3d 585, 589 (11th Cir. 1995) (legal services rendered for claimant of a maritime lien were not necessaries); *American Oil Trading, Inc. v. M/V SAVA*, 47 F. Supp. 2d 348, 353 (E.D.N.Y. 1999) (same); *James Creek Marina v. Vessel MY GIRLS*, 964 F. Supp. 20, 23 (D.D.C. 1997) (same).

MRS urges this Court to define necessaries expansively. It points to the decision in *Equilease Corp. v. M/V SAMPSON*, which defined necessaries to include "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." 793 F.2d 598, 603 (5th Cir. 1986) (en banc). In holding that insurance was a necessary, this Court stated that "[n]ecessaries are things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." *Id.*

MRS's reliance on *Equilease* has some merit. *Equilease* establishes that claimants can get a maritime lien for "providing" intangible services.[2] *Id*. This Court declared that the definition of "necessaries" is particular to the vessel. "It is the present, apparent want of the vessel, not the character of the thing supplied, which makes it a necessary." *Id*. (citing 2 Benedict on Admiralty § 34 (7th ed. 1984)). Unlike *Bradford Marine*, *American Oil*, and *James Creek Marina,* the legal services in this case did not enforce a maritime lien against the vessel but released the GOLDEN PRINCE from seizure. It is arguable that the legal services that released the GOLDEN PRINCE and prevented rearrest enabled her to perform her function and were useful to her.

_____

[2] At the time of <u>Equilease</u>, the statute used the term "furnishing" rather than "providing." <u>See</u> 46 U.S.C. 971 (1982). The legislative history indicates that the change to "providing" made the statutory terms consistent with other laws, and did not change substantive law. <u>See</u> H.R. Rep. 100-918, <u>reprinted in</u> 1988 U.S.C.C.A.N. 6104, 6107, 6141.

*Equilease*, however, focused on the utility of the claimed necessary to vessel operations. This Court held that because insurance is "essential to keep a vessel in commerce," it is a necessary. *Id.* at 604. Here, the legal services were not something the GOLDEN PRINCE needed "just to carry on its normal business." *Id.* These legal fees stemmed from a breach of contract claim for unpaid wages and penalties. MRS settled claims from current and former crewmembers of several vessels, many of whom may never have served on the GOLDEN PRINCE. Not only did the legal services protect the owners from alleged misconduct claims even from crewmembers far removed from the GOLDEN PRINCE, but the legal expenses would have been unnecessary had the vessel kept up with its costs of doing business. These expenses are beyond the scope of necessaries for the GOLDEN PRINCE's normal operations.

MRS argues that this case is unique, and that this Court could rule in its favor without opening the floodgates to "similar, but less unique, claims." We disagree. The district court's decision was not the first time that MRS has lost a legal challenge for attorney fees under similar circumstances. *See J.P. Provos Maritime, S.A v. M/V AGNI et al.*, 1999 U.S. Dist. LEXIS 12012, 10 (E.D.La. 1999) (denying MRS's claim that legal services were necessaries in an unrelated case where MRS released the vessel from seizure). Indeed, this situation is not unique enough. If legal services that protect vessels from seizure are "necessary" for the

7

vessel to carry out its function, then all attorneys who defend ship owners from tort claims, tax claims, or any other type of claim will automatically hold a maritime lien for their fees.

MRS argues that there is no justification for courts to treat attorneys differently from other suppliers of necessaries. The First Circuit, for instance, allowed a maritime lien to the vessel's master for his air fare to New York from Puerto Rico as he attempted to obtain funds from the owners to pay the crew and prevent the vessel's arrest. *See Payne v. S/S TROPIC BREEZE*, 423 F.2d 236 (1st Cir.), *cert. denied sub nom. Samadjopoulos v. National Western Life Ins. Co.*, 400 U.S. 964, 91 S.Ct. 363 (1970). Reimbursing the master, who runs the vessel, and paying the owner's attorneys are two different things. *Payne* hardly compels expansion of the necessaries lien on behalf of attorneys.

Despite its superficial similarities to other goods and services that have been deemed necessaries, a maritime lien for attorney fees would conflict with the purposes of the FMLA. The FMLA "was intended to encourage private investment in the maritime industry." *Equilease*, 793 F.2d at 603. A judgment for MRS securing attorney fees would encourage ship owners and attorneys to spare no expense defending owner financial interests. Such a lien would prefer ship owners to the claimants for necessaries, whose attorneys' fees are unsecured by the FMLA. *See Bradford, supra*. If MRS's position were the law, an owner could quickly dissipate a

8

supplier's claim for necessaries simply by hiring attorneys and encouraging them to run up fees that would offset the claimant's lien. Even the threat of such an action would tend to force suppliers to settle, undermining the very protection the law aimed for. Ultimately, maritime industry investment would be discouraged.

## CONCLUSION

For these reasons, we decline to become the first court in the history of American maritime law to declare that legal services are necessaries. We need not address MRS's arguments based on the assumption that they are. The district court's judgment is **AFFIRMED**.

9